**In re Jerry Jack EISNER and Mary Jo Eisner, Debtors.**

**TREVOR STEEL COMPANY, Plaintiff,**

v.

**Jerry Jack EISNER, Defendant.**

**Bankruptcy No. B82–03312.**

**Adv. No. B83–0633.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Dec. 2, 1983.

Ronald M. Rothstein, Karbel, Eiges, Rothstein & Karbel, P.C., Southfield, Mich., for plaintiff.

Brian A. Bash, Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A., Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION

JOHN F. RAY, Jr., Bankruptcy Judge.

This matter came on for hearing on the complaint of Trevor Steel Company ("Trevor") to determine the dischargeability of a debt due it, the answer of the debtor, Jerry Jack Eisner ("Eisner"), the evidence, stipulations, arguments and briefs of counsel.

The parties stipulated as follows:

The Court has jurisdiction over the parties and the subject matter.

There is adopted by references into this Stipulation of Facts certain Exhibits to the Proof of Claim filed by the plaintiff which is attached to the Complaint in this adversary proceeding. These are Exhibit A, Agreement between The Avis Steel Company (Avis) and Trevor Steel Company (Trevor) dated November 20, 1980, Financing Statements filed with the

Michigan and Ohio Secretaries of State, Subordination Agreement between Carl D. Glickman, Trustee, Trevor and Avis dated November 20, 1980. Each of the described documents is genuine, authorized by the corporate parties and was executed by those named therein as executing parties in their representative capacities. The Financing Statements were filed with the appropriate public officers and the security interest created under Exhibit A was perfected. Exhibit C was mailed and received as required by Exhibit B. If there is any conflict in this Stipulation between the Exhibits themselves and any description of the terms thereof in this narrative, the Exhibits will prevail.

Avis was in 1980 an Ohio corporation with its principal place of business in Cleveland, Ohio. It was engaged in business as a steel broker—buying and selling, but not processing, steel. Trevor was a Michigan corporation with its principal place in Roseville, Michigan. Trevor was at the same time engaged in business as a steel warehouse, which included warehousing, buying, selling and processing steel.

Eisner, the Debtor, was President of Avis and owner of 50% of its issued and outstanding common stock. He was employed full time by Avis and was involved in its daily business operations. Prior to November 20, 1980, Avis had purchased steel from Trevor on open account. On November 20, 1980, Avis and Trevor, both being represented by counsel, entered into a Security Agreement, Exhibit A, which was negotiated and signed by Eisner on behalf of Avis and Philip Krawitz on behalf of Trevor under which it was contemplated that Avis would in the future be purchasing steel from Trevor on credit. Under that Agreement, to secure present and future liabilities owing from Avis to Trevor, Avis granted Trevor a security interest in all of its present and future accounts. Further, in paragraph 8 of the Agreement, it was agreed that a separate special checking account in Avis' name at National City Bank of Cleveland would be set up (lock box account).

Avis was required to send to Trevor all invoices and delivery documents in respect of sales made by Avis to its customers. However, such invoices were not to include pricing data, as Avis did not want Trevor to know what it was charging for the steel it purchased from Trevor.

The lock box account at National City Bank was set up and the post office box obtained as contemplated by Exhibit A. Avis' account debtors were notified by Avis to mail their remittances to the post office box.

Robert Klein, Controller of Trevor, spoke to National City Bank by telephone on a daily basis and was informed of the amount of payments deposited to the lock box account. He would also speak to Lawrence Wolf, Avis' accountant, and inform him of the payments. Wolf would inform Klein as to which of Avis' outstanding invoices such payments related to.

During 1981, prior to December 1, because Avis was in need of funds to meet its obligations, Eisner contacted one of Avis' account debtors, Leslie Locke Division of Questor Corp., and obtained payments from said account debtor on its account owed to Avis against which Trevor's security interest applied and deposited such payments, not to the lock box account, but to the general account of Avis. Thereafter, such funds were used for the payment of Avis' other obligations, including trade obligations, some of which were personally guaranteed by Eisner, and employee payroll obligations, including Eisner's salary. The Trevor account was not guaranteed by Eisner. Avis' receipt of direct payment from this account debtor as hereinbefore described was without the knowledge, consent or authority of Trevor. When Avis' account with Trevor became seriously delinquent, Robert Klein called Leslie Locke in November, 1981 and was informed that payments had been paid directly to Avis at Eisner's request. The total amount of such direct payments exceeded $301,-292.88. Avis has been out of business and insolvent since sometime in 1982. Trevor

claimed that Eisner was personally liable to it for causing the direct payments to be made to Avis and for converting Trevor's security interest therein. Eisner denied Trevor's claim but he paid Trevor the sum of $114,374.28 on its claim, leaving a remaining loss to Trevor of $186,918.60. Avis has no assets with which to pay Trevor. It is agreed that such payment by Eisner to Trevor shall not be deemed an admission of liability by Eisner.

The Court finds from the evidence that in addition to Eisner's salary, which was paid out of the general account of The Avis Steel Company ("Avis"), Eisner also received $106,000.00 in non-salary checks from the account at the time he was diverting payments of Leslie Locke Division of Questor Corp. ("Leslie Lock") from the lock box account to Avis' general account. Eisner's brother, Sanford Eisner, who was not an employee of Avis, also received $22,000.00 from Avis' general account during the time in question.

### Question Presented

Whether Trevor's claim is nondischargeable under Section 523(a)(4) and/or (a)(6) of the Bankruptcy Code for fraud while acting in a fiduciary capacity and/or for willful and malicious injury by Eisner to another entity or to the property of another entity.[1]

### Conclusions of Law

In order to find a debt nondischargeable under Section 523(a)(6), it must be found that the debtor acted intentionally in converting Trevor's property, and that the debtor intended to harm Trevor by his actions. A mere technical conversion, without the intent to harm Trevor's property, would not constitute a "willful and malicious injury." *In re Nelson,* 4 C.B.C.2d 548 (N.D.Ill. 1981); *In re Hodges,* 4 B.R. 513 (W.D. Bkrtcy.Va.1980).

Malice may be inferred from the circumstances surrounding this transaction. In nearly every case where the Court has found debts dischargeable despite the debtor's conversion of property, the debtor has been relatively unsophisticated in business transactions, and has converted the property to meet pressing financial needs. *Nelson, supra; Hodges, supra; Matter of McLaughlin,* 14 B.R. 773 (Bkrtcy.N.D.Ga. 1981).

Where the debtor is a relatively sophisticated businessman and knows the consequences of his conversion, courts are reluctant to hold that the debt is dischargeable. This is not because businessmen are held to a higher standard of conduct, but because they are presumed to know the harm which will result from conversion of a secured party's collateral. *In re Scotella,* 18 B.R. 975 (Bkrtcy.N.D.Ill.1982); *cf. Matter of Ricketts,* 16 B.R. 833 (Bkrtcy.N.D.Ga.1982). A deliberate or intentional act, done with intent to do harm to another's property, is nondischargeable under Section 523(a)(6). *In re Meyer,* 7 B.R. 932 (Bkrtcy.N.D.Ill. 1981). In the instant case, debtor knew that by diverting the Leslie Locke payments to Avis' general account, he was depriving Trevor of its only security for the advances made to Avis. From his experience in the steel industry, he knew the consequences of his conversion, and deliberately diverted the funds.

Malice can also be inferred where the debtor conceals his conversion from the creditor. *Scotella, supra; Ricketts, supra; Matter of Ries,* 22 B.R. 343 (Bkrtcy.W.D. Wis.1982). This debtor knew that Trevor relied on the lock box funds in shipping steel to Avis. Trevor's controller repeatedly informed debtor of his concern over the late payments into the lock box account. Yet the debtor purposely misled Trevor into believing that payments into the account

---

1. Section 523(a)(4) and (a)(6) of the Bankruptcy Code (11 U.S.C. 523):

    (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
    . . . .

    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

    . . . .
    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

would be forthcoming from Leslie Locke. The debtor's business experience and his continued concealment of the conversion make it clear that his actions were deliberate and intended to harm Trevor. The fact that debtor may have felt it necessary to harm Trevor in order to aid Avis is no defense.

There is no question in this Court's mind that the debtor was acting in a fiduciary capacity at all times when he was diverting the moneys paid by Leslie Locke from the lock box account to Avis' general account, and was guilty of fraud and/or misappropriation of funds while acting in a fiduciary capacity. *John P. Maguire & Co. Inc. v. Herzog,* 421 F.2d 419 (U.S.C.A. 5th Cir. 1970).

This Court further concludes that the debtor's diversion of the Leslie Locke payments from the lock box to Avis' general account, with the intent thereby to appropriate it to Avis' use as well as his own, constitutes embezzlement on his part.

The debt due Trevor in the amount of $186,918.60 is the result of debtor's willful, malicious, fraudulent and illegal acts, and, therefore, nondischargeable under Section 523(a)(4) and (6) of the Bankruptcy Code.