Jose Leon ROMERO, aka Joe L. Romero, aka Buddy Romero, et al., Bankrupts.

Norman ALLEN and Herbert Ashcroft, Plaintiffs-Appellees,

v.

Jose Leon ROMERO, aka Joe L. Romero, aka Buddy Romero, et al., Defendants-Appellants.

No. 75–1360.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Feb. 23, 1976.

Decided May 11, 1976.

William S. Dixon, of Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, N. M., for plaintiffs-appellees.

Charles G. Berry, of Marchiondo & Berry, P. A., Albuquerque, N. M., for defendants-appellants.

Before SETH, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Jose Leon Romero (Romero),[1] and De-Leon Construction Company, Inc., (De-Leon), appeal from an order of the District Court dismissing an appeal from a judgment of $54,708.30 entered against them by the Bankruptcy Court, which found that this judgment, in favor of Allen, is a non-

---

1. A/K/A Joe L. Romero, and Buddy Romero.

dischargeable debt under § 17(a)(2), (4) of the Bankruptcy Act, 11 U.S.C.A. § 35.

Romero, on behalf of DeLeon, contracted with Norman Allen and Ashcroft Realty (Allen) on October 20, 1972, for the construction of three four-plexes. Romero agreed to build the units for $39,900 each. The buildings were to be completed within 120 days of notification from Allen to begin construction. Additional terms provided that Romero was to pay "2 construction points and interest on the construction loan including but not limited to permits, insurance, etc., any additional points charged for construction delays will also be paid by Contractor", and that "In the event that Norman Allen or Ashcroft Realty has claims made against them for failure to deliver these buildings according to agreements made with purchasers Buddy Romero and DeLeon Construction will hold Norman Allen and Ashcroft Realty free and clear and will assume all legal and other costs so as to correct the situation". [R., Vol. II, at 168].

Construction began November 4, 1972. Romero and Allen agreed that funds would be advanced to Romero so that he could meet his obligations to sub-contractors, materialmen and laborers, and pursuant thereto Allen made several disbursements to Romero. About two months after the construction had begun, Allen learned that liens had been filed on the four-plexes. Allen then made inquiry of Romero in order to determine whether the laborers, materialmen and sub-contractors had been paid with the monies he advanced. Allen testified that Romero told him that advances made had been applied to meet those obligations. Allen then agreed to make further advances on Romero's assurance that the funds would be used to pay the sub-contractors, materialmen and laborers. As evidence of this understanding Allen introduced a letter which he delivered to Romero:

This draw is advanced on the assurance and representation of Buddy Romero and DeLeon Construction Company, that all materialmen, laborers and subcontractors on buildings:

1729 Paisano, N.E.
1000 Chellwood, N.E.
1004 Chellwood, N.E.

have been paid in full for work done and materials supplied to this date.

[R., Vol. II at 178].

Additional problems developed during the construction. Romero asked Allen for an extension of time for completion. Allen granted a conditional extension of 45 days and shortly thereafter he proposed that any future advances to Romero be deposited to an escrow account to insure payment to the materialmen, sub-contractors and laborers. Romero refused to accede to the proposed escrow arrangement. Further attempts were made by Allen to gain assurance that all interested parties were being paid and that construction was timely proceeding. He demanded Romero's records of disbursements to all who had performed work or furnished materials on the project. Allen reviewed the lists of disbursement and demanded that they be documented. When Romero failed to provide such documentation, a court order was obtained requiring that he make his books available. An audit of Romero's books then revealed that there remained unpaid a substantial sum due to materialmen, laborers and sub-contractors. Shortly after the audit, Romero was discharged as contractor by Allen, and another was hired to complete the project.

Romero's testimony disclosed that he did not maintain separate bank accounts for each job, and that it was impossible for him to determine if the moneys advanced by Allen were disbursed to the materialmen, laborers, and sub-contractors on the four-plexes; that the itemized lists of disbursements were not capable of being documented; and that the sole purpose of the false itemized lists of disbursements was to gain additional advances from Allen.

Findings of Fact and Conclusions of Law were made and Judgment was entered by the Bankruptcy Court following trial in favor of Allen in amount of $54,708.30. This

amount was declared to be nondischargeable in bankruptcy. Appeal was taken to the District Court, which was dismissed with prejudice. This appeal followed.

The following issues are presented: (1) whether the undischargeable judgment of $54,708.30 is supported by the evidence; (2) whether the District Court erred in denying Romero's motions for diminution of the record, hearing on the merits, to temporarily suspend the time for filing of brief, for oral argument, and in dismissing Romero's appeal with prejudice.

## I.

### A.

The Bankruptcy Court found that the actions of Romero "constitute the obtaining of money by false pretenses or false representations, fraud, misappropriation and defalcation of trust monies by one acting in a fiduciary capacity and willful and malicious conversion of the property of another". [R., Vol. I at 93]. These three findings rendered Romero's debt to Allen nondischargeable under § 17(a)(2) and (4) of the Bankruptcy Act. 11 U.S.C.A., *supra.*

Any one of the three grounds of exception from discharge by the Bankruptcy Court render a debt nondischargeable. We deem it necessary to consider only whether the debt is nondischargeable under § 17(a)(4) of the Bankruptcy Act, *supra.*[2] In order to hold the debt nondischargeable under § 17(a)(4), *supra,* we must be convinced that the conduct of Romero constituted fraud and that the fraud was perpetrated while Romero was acting in a fiduciary capacity.

■ "Fiduciary capacity" as used in § 17(a)(4), *supra,* has been held to connote the idea of trust or confidence, which relationship arises whenever one's property is placed in the custody of another. *Hamby v. St. Paul Mercury Indemnity Company*, 217 F.2d 78 (4th Cir. 1954); cf. *Arnold v. Em-*

ployers Insurance of Wausau, 465 F.2d 354 (10th Cir. 1972); *In Re Grissom*, 345 F.Supp. 316 (D.Colo.1972). It is also generally recognized that the exception under § 17(a)(4) applies only to technical trusts and not those which the law implies from a contract. *See* Remington on Bankruptcy, § 3364 and cases cited. Further, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

We shall proceed to determine, from the record before us, whether Romero acted in a fiduciary capacity in his dealings as a general contractor with Allen. New Mexico has enacted a comprehensive scheme for the issuance of licenses to those engaged in the construction industry. §§ 67–35–1 through 67–35–67 N.M.S.A. (1953). § 67–35–26 provides for the revocation or suspension of a license on the ground of:

G. diversion of funds or property received for prosecution or completion of a specific contract, or for a specified purpose in the prosecution or completion of any contract, obligation or purpose;

■ The Supreme Court of New Mexico has stated that the purpose of the Act is to provide "a comprehensive method for the licensing and control of contractors in order to protect the public from either irresponsible or incompetent contractors". *Peck v. Ives*, 84 N.M. 62, 499 P.2d 684 (1972). In our view, § 67–35–26, *supra,* clearly imposes a fiduciary duty upon contractors who have been advanced money pursuant to construction contracts.

■ It is undisputed that Romero was advanced $49,950 by Allen. By virtue thereof, Romero stood in a fiduciary capacity toward Allen. Romero was under a duty to assure that money advanced to him was applied in payment for materials and labor relating to the four-plexes. That Romero

---

**2.** § 17(a)(4) provides:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except

such as . . . (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity;

was acting in a fiduciary capacity imposed by law, rather than one implied by law, is evidenced by the fact that his obligation not to divert advances is imposed by statute. The fiduciary capacity in which Romero was acting accordingly existed independent of any express understanding he had with Allen governing the same obligation. Obtaining a state license by a contractor is a prerequisite to entering the construction industry in New Mexico; accordingly, the obligation and duties imposed under § 67–35–26, *supra*, were binding upon Romero prior to any dealings he had with Allen. We hold that the Bankruptcy Court's finding that Romero was acting in a fiduciary capacity within the meaning of § 17(a)(4), *supra*, is not clearly erroneous. Arnold, *supra*.

One issue remains involving § 17(a)(4), *supra*, i. e., whether the debt involved herein was created by fraud, embezzlement, misappropriation or defalcation on the part of Romero. We hold that the debt was created by Romero's fraud.

■ In order to maintain an action for fraud these elements must be established: that there was a false misrepresentation of a material fact, knowledge of its falsity when made, intent to deceive and reliance thereon with resulting damages. *Pacific Royalty Company v. Williams*, 227 F.2d 49 (10th Cir. 1955). The following facts reflected by the record demonstrate that these elements were met: that the money advanced by Allen was to be used to pay for all work, labor and materials and that at the time the advances were made all materialmen, laborers and subcontractors were not paid; that Romero knew these representations were false when made inasmuch as he subsequently admitted that there were numerous unpaid bills on the Allen four-plexes; that the representations were made for the sole purpose of obtaining additional funds from Allen; and that Allen advanced money to Romero on the representations that the funds advanced were being used to pay materialmen, laborers, and sub-contractors on the Allen four-plexes.

■ We hold that there is substantial evidence in support of the finding of the Bankruptcy Court that the debt in this case was created by the fraud of Romero. Great weight should be accorded to the findings of the judge in bankruptcy for he has had occasion to observe the demeanor of the witnesses and to assess credibility. *Wolfe v. Tri-State Insurance Company*, 407 F.2d 16 (10th Cir. 1969). *In Re Taylor*, 514 F.2d 1370 (9th Cir. 1975); *See also* Rule 810, U.S.C.A., Bankr.Rules 1975 Pamph.

### B.

Romero challenges the sufficiency of the evidence to support the Bankruptcy Court's finding that the amount of the nondischargeable debt is $54,708.30.

The contract called for the construction of three four-plexes at a price of $39,900 each. Thus, if Romero had performed the contract the total cost of the buildings to Allen would have been $119,700. However, as a result of Romero's failure to complete the units under the terms of the contract, Allen's construction costs were substantially greater than the contract price. The record evidences that additional costs and damages suffered by Allen amounted to $45,868.61 [3] by virtue of the fraudulent representations made by Romero. Allen claims the following as additional items of damage: $2,000

| | |
|---|---|
| Payments by Allen | 19,900.71 |
| Loss on sale of four-plex | 13,000.00 |
| Payment to new contractor | 3,000.00 |
| Attorney's fee | 4,500.00 |
| | $165,568.61 |
| Contract price | – 119,700.00 |
| | $ 45,868.61 |

\* Under the contract Romero agreed to pay both interest and points.

---

**3.** This figure represents the difference between the contract price of $119,700 and the actual cost of completing the building and damages incurred as a direct result of Romero's fraud.

| | |
|---|---|
| Advances made by Allen | $ 49,950.00 |
| Interest payments by Allen \* | 4,527.76 |
| Payment of points by Allen \* | 3,636.63 |
| Disbursements made to complete job: | |
| New Mexico Title Co. | 67,053.51 |

attorney fees incurred as a result of litigation in connection with a purchaser's termination of a contract of purchase of a four-plex;[4] interest on the damages computed from the date of the last advance at 6% equalling $5,000; and consequential damages of a non-pecuniary nature for inconvenience, diversion of efforts and mental suffering caused by the fraud.

■ Allen testified that he had incurred legal expenses of $2,000 in connection with the termination of the contract for purchase of one unit. This was uncontradicted. This expense was a direct consequence of Romero's failure to perform his agreement with Allen. Had it not been for the fraudulent representations of Romero concerning the use of advances made by Allen it is reasonable to conclude that the unit would have been available for sale at the date specified in the contract. Accordingly, $2,000 in attorney's fees is properly recoverable as a part of the debt resulting from Romero's fraud and correctly represented a portion of the judgment entered by the Bankruptcy Court. *See* 11 U.S.C.A. § 103(a)(9).

■ Allen contends that the interest on the damages he has sustained are recoverable. We agree. The general rule in bankruptcy is that interest on the debt stops, for the purposes of liquidating a bankrupt's estate, at the filing of the petition in bankruptcy. *Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911); 9 Am.Jur.2d, Bankruptcy, § 489; 27 A.L.R.2d, Anno.: Bankruptcy-Surplus-Interest, § 1. 11 U.S.C.A. § 103 which, in setting forth the claims which may be proved provides (a)(1) for proof of fixed liability owing at the filing of the petition "with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest" and (a)(5) debts reduced to judgment after the filing of the petition "less . . . interest accrued after the filing of the petition".

■ The above rules apply, of course, to that portion of a provable claim (even though exempt from discharge such as the claim at bar) to the extent that it may be satisfied from assets in the bankrupt's estate. The balance of a nondischargeable debt—such as the debt owing Allen—is excepted from the operation of a discharge in bankruptcy by virtue of 11 U.S.C.A. § 35 as one created ". . . by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity". In view of the fact that the debt owing Allen is nondischargeable, the interest should continue to run and accrue simply because it has no effect upon the bankruptcy finances. Accordingly, interest is allowable from the date of Allen's last advance to the date of entry of the Bankruptcy Court's judgment in his favor. Interest on the debt for this period amounts to $5,274.82. That amount then, we hold, is allowable on the debt determined nondischargeable, i. e., the amount of the debt and the interest not satisfied out of the bankruptcy estate. "Thus, it has never been seriously suggested that a creditor whose claim is not provable against the trustee in bankruptcy loses his right to interest in a post-bankruptcy action brought against the debtor personally". *Bruning v. United States*, 376 U.S. 358, at 360, 84 S.Ct. 906, at 908, 11 L.Ed.2d 772, at 774 (1964); *Hugh H. Eby Co. v. United States*, 456 F.2d 923 (3rd Cir. 1972).

■ Allen argues that the Bankruptcy Court properly allowed consequential damages for inconvenience, diversion of efforts and mental suffering. This claim is presented without cogent authority. Further, we have been unable to determine the amount of such allowance by the Bankruptcy Court. In any event we hold non-recoverable any amount claimed for the alleged consequential damages.

Accordingly, the judgment of the Bankruptcy Court is reduced to $53,143.43 repre-

---

4. The purchaser rescinded the contract because the four-plex was not completed within the time limit set forth in the purchase agreement.

senting allowable damages suffered by Allen and interest computed to the date of the Bankruptcy Court's judgment as a result of the debt created by Romero while acting in a fiduciary capacity. § 17(a)(4), *supra*.

## II.

Romero contends that the District Court erred in denying his numerous motions and in dismissing the appeal with prejudice. We have considered each of these allegations. They are without merit.

The judgment of the District Court is thus affirmed as modified. The cause is remanded with instructions to the District Court to vacate the judgment of $54,708.30 and to enter a judgment of $53,143.43 in lieu thereof.