**In the Matter of William Howard DEAN, Debtor.**

**UNITED STATES FIRE INSURANCE COMPANY, Plaintiff,**

v.

**William Howard DEAN, Defendant.**

**Bankruptcy No. 79–240.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Feb. 25, 1981.

Leslie King O'Neal, Orlando, Fla., for plaintiff.

Zala L. Forizs, St. Petersburg, Fla., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM OF OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

This is a contested discharge proceeding and the matter under consideration is the dischargeability, vel non, of a debt admittedly due and owing by the Defendant, William Howard Dean (Dean) to the Plaintiff, United States Fire Insurance Company (US Fire). The original complaint filed by the Plaintiff set forth two counts. In Count I, the Plaintiff charged that the debt owed by the Defendant represents a liability as a result of a willful and malicious conversion of property of US Fire, by Dean, thus non-dischargeable by virtue of § 17(a)(2) of the Bankruptcy Act.

The claim of non-dischargeability set forth in Count II of the complaint was based on § 17(a)(4) and charged that Dean, while acting in a fiduciary capacity, misappropriated funds of US Fire. This Count was dismissed with prejudice on the ground that the Defendant was found not to have acted in a fiduciary capacity.

The case was tried on Count I of the amended complaint and the facts controlling this controversy as appear from the record can be summarized as follows:

At the time pertinent to this controversy, Dean was the president and sole stockholder of Omega Insurance Agency of Tampa, Inc. (Omega), a Florida corporation which acted as a general agent for several insurance companies. US Fire is an insurance company engaged primarily in general casual insurance business.

On May 1, 1972, Omega and US Fire entered into an "Agency Company Agreement". The agreement provided, inter alia, that Omega was authorized to solicit, receive, and transmit to the Plaintiff, proposals for insurance contracts and to bind and execute the insurance contracts on behalf of US Fire. The agreement also provided that Omega was entitled to collect and receive premium payments from the insured and authorized to retain its commission out of the premiums collected. According to the agreement, US Fire was to submit a monthly itemized statement of account to Omega and Omega was required to remit, if there was a debit balance, the amount due to the company within 45 days after the end of the accounting period.

On March 8, 1976, US Fire and Omega, for reasons not clear, entered into a superseding "Limited Agency Agreement" (Pl's Exh. # 8) which limited Omega's authority to continue to service insurance contracts already in force. This Limited Agency Agreement, however, did not change the accounting provisions of the original agreement.

Between December, 1975 and February, 1976, Omega received two premium payments in the amount of $56,706 on policies issued by US Fire from one of its customers, Florida-Georgia Tractor Company, Inc. (Florida-Georgia). According to the agency agreement, Omega was entitled to deduct from this amount, its commission and after such deduction, to remit to US Fire, the balance of the premium collected, i. e., $48,646.14. It is without dispute that Omega never remitted the balance shown on the

statement to US Fire, and this balance remained delinquent for some time.

In April, 1976, a representative of US Fire met with Dean at Dean's request, to discuss this particular delinquency. At the time of the meeting, Omega was already delinquent on the February balance in the sum of $22,444.15 which, under the accounting procedure, became due, and payable on or before April 15, 1976. Although the balance due on the March statement was not yet due, this was also discussed at the meeting, and Dean indicated that while he might be able to scrape up enough money to satisfy the February debit balance, he would not be able to satisfy the March debit balance, because of some serious difficulties encountered in the collection of the receivables of Omega. It appears that Omega was heavily involved in writing insurance policies for truckers and because of the gas crunch, the truckers were not able to operate and in turn, did not pay the insurance premiums on policies written by Omega on which Omega advanced the premiums. As a result, Omega encumbered approximately $100,000 uncollected accounts. Dean proposed to the representative of US Fire a long term pay off of his indebtedness to US Fire and agreed to sign an interest bearing note in the principal amount of $47,673.66. He did execute a note and $8,172.97 was paid on this note by Omega. There now remains due on the note a sum of $39,-569.69. This is the debt which US Fire seeks to have declared nondischargeable pursuant to § 17(a)(2) of the Bankruptcy Act.

At all times material to this controversy, Dean was the president and sole stockholder of Omega; he was its chief executive officer and he either wrote all checks on Omega's account or authorized all checks written on the account. All premiums collected by Dean, including the two premiums collected from Florida-Georgia were deposited in Omega's general operating account and the agency agreement did not require the agent to set up a special trust account for the deposits of premiums collected. All the operating expenses of Omega were paid out

**324**

of this same account. While there is evidence in the record that some of Dean's personal expenses were paid out of the corporate account, some of these were legitimate business expenses. In any event, the monies deposited in the account were general funds of Omega in which US Fire had no specific property interest, and the manner in which Omega or Dean handled these funds is without legal significance concerning the resolution of this particular controversy.

The claim of non-dischargeability in this case is based on § 17(a)(2) of the Bankruptcy Act which, in pertinent part, provides as follows:

Title Sec. 17

Section 17(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, . . . (1) . . . (2) are liabilities . . . for willful and malicious conversion of the property of another . . ."

■ It should be noted at the outset that the fact that the indebtedness admittedly due and owing to US Fire is evidenced by a promissory note is without significance and the issue of dischargeability is in no way affected by the fact that the Defendant signed a promissory note for the amount of the debt. *Arnold v. Employers Insurance of Wausau*, 465 F.2d 354 (10th Cir. 1972).

■ In order to sustain a claim of non-dischargeability under this section, the burden of proof is, of course, on the party asserting the claim. Thus, the Plaintiff must establish by clear and convincing evidence, all essential elements of a conversion and must establish not only that in fact the property of another was converted, but was done willfully and maliciously. *1(a) Collier 17.17 ¶ 1 at page 1650.4.* Conversion is generally defined as an unauthorized and wrongful exercise of dominion and control over personal property of another to the exclusion and inconsistent with the rights of the owner. *Black's Law Dictionary 300 (5th Ed. 1979).* In essence, conversion is an unauthorized action which deprives another of his property permanently or for an indefinite period of time.

■ It is self-evident that one cannot convert its own property and an action for conversion can only be maintained by one who had, at the time of the conversion, either a general or a special ownership interest in the property. *Deckle v. Calhoun,* (C 1910), 60 Fla. 53, 53 So. 14, S.Ct. Fla.; *Fletcher v. Dees,* (1931) 101 Fla. 402, 134 So. 234. Thus, if in the present instance the evidence presented failed to establish with the requisite degree of proof that the monies collected by Dean from Florida-Georgia were monies in which US Fire has a general or special ownership interest, this should end the inquiry, and whether Dean's conduct was willful and malicious is without significance.

■ In the present instance, the evidence presented by the Plaintiff failed to show that US Fire has any property interest in the premiums collected by Dean or that it was ever entitled to possession of the actual monies paid by Florida-Georgia to Omega. As noted earlier, the Agency Agreement between US Fire and Omega did not require Omega to segregate and place into a special account, premiums collected on policies issued by US Fire. Omega was free to use the monies for any purpose and it only had an obligation to pay US Fire within 45 days of the end of the accounting period, any net debit balance shown on the sta. The representative of US Fire knew that Omega, just like all of its agents, deposited premium monies into a general operating account and used the monies to run their general agency business. There is no evidence in this record to show that this practice was a violation in any sense of the Agency Agreement. The fact of the matter is, and it is clear, that US Fire did not care what Omega did with premiums collected so long as it paid the balance due to US Fire within the time specified in the Agreement. Omega was authorized to issue policies without prior payment of premiums by the insured and if the insured failed to pay the premium, Omega would still have to be indebted to US Fire for the premiums. There is no question that the relationship between Omega and US Fire

 

was merely the relationship of a debtor and a creditor, and not principal and agent in the orthodox sense.

In light of the foregoing, this Court is satisfied that the claim of non-dischargeability based on conversion cannot be sustained.

A separate final judgment will be entered in accordance with the foregoing.