**In the Matter of Robert Richard PENNING, d/b/a Campers Corral, Debtor.**

**BOMBARDIER CORPORATION, Plaintiff,**

**v.**

**Robert Richard PENNING, d/b/a Campers Corral, Defendant.**

**Bankruptcy No. 81–00329–B. Adv. No. 81–0985.**

United States Bankruptcy Court, E. D. Michigan, S. D.

Aug. 12, 1982.

Marilyn Jean Kelly, Birmingham, Mich., for plaintiff.

Alan P. Goldstein, Southfield, Mich., for debtor/defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

The question presented is whether a debtor, by conduct as an officer of a corporation, may incur liability to a creditor of the corporation which is nondischargeable in his individual bankruptcy proceeding.

Campers Corral, Inc. was a family-owned Michigan Corporation, of which Robert Richard Penning (debtor) was the principal stockholder, president, and managing officer. In September 1979, Campers Corral entered into an agreement with Bombardier Corporation to act as a retail distributor of snowmobiles. The Agreement provided that when the snowmobiles were sold, the Debtor would hold the entire proceeds "in the same form as received, in trust for Secured Party [Bombardier], separate and apart from Debtor's funds and goods." Additionally, the debtor personally guaranteed the payment of such purchases. Seeking to expand his line of inventory, the debtor entered into a separate agreement with Bombardier to sell its line of clothing, parts and snowmobile equipment. Pursuant to this agreement, Bombardier would retain a security interest in such inventory but, unlike the snowmobile agreement, the debtor was not required to personally guarantee payment and there was no requirement that the debtor hold the proceeds of sale in trust for Bombardier.

In January of 1980, Bombardier notified Campers Corral that its account was excessively in arrears and threatened to stop future shipments unless the account was paid. In reply, Campers Corral advised Bombardier that due to the present economic situation and mild winter, it would no longer be feasible for it to continue selling snow recreation products. Thereafter, Campers Corral formally notified Bombardier that it exercised its right to terminate the dealership agreement, and advised Bombardier that it would box any remaining Bombardier inventory and hold it for Bombardier. At the time that Campers Corral terminated the dealership agreement, it was indebted to Bombardier in the approximate amount of $24,846.39. No payments were made to Bombardier after the dealership agreement was terminated.

In April 1980, an agent for Borg-Warner Acceptance Company, Bombardier's assignee on the snowmobile contracts, reclaimed the snowmobiles in the possession of Campers Corral. Six snowmobiles were unaccounted for. Bombardier made no attempt to reclaim the remaining inventory. In April 1981, the Bank of the Commonwealth, holder of a blanket lien on Campers Corral's assets, repossessed the inventory remaining at that time and sold it for $200.00. The goods repossessed by the Bank did not contain any property sold to Campers Corral by Bombardier.

On January 21, 1982, Robert Richard Penning filed a voluntary petition for relief under Chapter 7. Thereafter, Bombardier filed a complaint against the debtor pursuant to sections 523(a)(4) and 523(a)(6) to except from discharge the $8,884 debt owing to it by Campers Corral for the six unaccounted-for snowmobiles and the $15,962.39 debt for clothing, parts and snowmobile equipment.

Section 523(a)(4) provides that a discharge "does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Section 523(a)(6) excepts from discharge debts incurred by "willful or malicious injury by the debtor to another entity or to the property of another entity." The legislative history makes it clear that "[t]he phrase "willful and malicious injury" covers a willful and malicious conversion." 124 *Cong.Rec.H.* 11,096 (Sept. 28, 1978); S. 17,412 (Oct. 6, 1978).

 Officers and directors of a corporation are generally not liable for the debts of the corporation merely because they are officers or directors or are engaged in the active management of the corporation. *Nettles v. Childs*, 100 F.2d 952 (4th Cir. 1939); *American Cyanamid Co. v. The Eliz-*

*abeth Arden Sales Corp.*, 331 F.Supp. 597 (S.D.N.Y.1971). However, a corporate officer owes a fiduciary duty to the corporation and, therefore, may be liable to the corporation or to a trustee in bankruptcy for profits made by them at the expense of the corporation. *Newman v. Forward Lands, Inc.*, 418 F.Supp. 134 (E.D.Pa.1976); *In re Hammond*, 98 F.2d 703 (2d Cir. 1938); *Bloemecke v. Applegate*, 271 F. 595 (3d Cir. 1921). In addition,

> It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom.

*Lobato v. Pay Less Drug Stores*, 261 F.2d 406, 408–09 (10th Cir. 1958). See also, *Ford Motor Credit Co. v. Minges*, 473 F.2d 918 (4th Cir. 1973); *Hagemeyer Chemical Co. v. Insect-O-Lite Co.*, 291 F.2d 969 (6th Cir. 1961); *Matter of Brough*, 2 B.C.D. 291 (E.D. Mich.Bkrtcy.1976); *Bush v. Hays*, 286 Mich. 546, 282 N.W. 239 (1938). The debt so created is nondischargeable in the officer's or director's personal bankruptcy. *Matter of Durand Milling Co.*, 9 B.R. 669 (E.D. Mich.Bkrtcy.1981).

To prevail in light of the foregoing, Bombardier must establish that the debt incurred by Campers Corral is also a debt for which the debtor is liable and, in addition, that the debt is nondischargeable as to him.[1] The nondischargeability of the debt for the snowmobiles and inventory purchased by Campers Corral will be considered separately.

The evidence discloses that Campers Corral disposed of six of Bombardier's snowmobiles without accounting for the proceeds to Bombardier in contravention of the express trust provisions of the security agreement. Campers Corral, by disposing of the snowmobiles without accounting for the proceeds of sale, in express violation of its security agreement with Bombardier, was guilty of a willful and malicious conversion of Bombardier's property. *Bennett v. W. T. Grant Co.*, 481 F.2d 664 (4th Cir. 1973); *In re Dean*, 9 B.R. 321 (Bkrtcy.M.D. Fla.1981); *In re Day*, 4 B.R. 750 (S.D.Ohio 1980), *app. dismissed*, 633 F.2d 214 (6th Cir. 1980). The debtor actively participated in this conversion. He made the decision to dispose of the snowmobiles and the decision not to turn over the funds derived from their disposition to Bombardier. It follows, therefore, that this debt is non-dischargeable by virtue of section 523(a)(6). *In re Stone*, 3 BCD 871 (S.D.Ill.B.J.1977). In light of this ruling, it is unnecessary to decide whether the debt is also nondischargeable by virtue of section 523(a)(4). *See, John P. Maguire & Co. v. Herzog*, 421 F.2d 419 (5th Cir. 1970).

The only question that remains is whether the remainder of Bombardier's debt incurred by Campers Corral for purchases other than for snowmobiles is nondischargeable under section 523(a)(4) or section 523(a)(6). Bombardier alleges that $60,340.07 of corporate funds were diverted for the personal benefit of the debtor or members of his family. Some of the alleged payments were never actually made.[2] Other payments clearly represent legitimate business expenses of the corporation.[3] Although the record is not completely clear, it may be that some of the payments personally benefited the debtor.[4] To the ex-

---

1. The debtor guaranteed payment for the snowmobiles purchased by Campers Corral. However, this guarantee is not material to the nondischargeability issue.

2. Checks in the amount of $19,500.00 issued to the debtor were never cashed.

3. A payment of $7,698 to a Harry Hatcher represented payment for his interest in a mobile home that was sold by Campers Corral.

$13,190.85 was paid to employees who were relatives of the debtor. However, the fact that the employees were relatives of the debtor does not of itself make the payments improper.

4. Campers Corral made payments of $12,126.23 on properties leased to it by the debtor's wife. The debtor testified that the properties were used by Campers Corral for business purposes. This testimony was not disputed by Bombardier. Nor has Bombardier introduced any testimony to establish that the payments

tent that any funds of Campers Corral were diverted for the personal benefit of the debtor, he is liable to the corporation or its trustee for the amount so appropriated. *In re Bernard*, 87 F.2d 705 (2d Cir. 1937); *Kaufman v. Lederfine*, 49 F.Supp. 144 (S.D. N.Y.1943). However, unless the proceeds from the sale of property of a creditor are traceable to an officer or director, the officer and director is not liable to each individual creditor who was not paid by the corporation. *In re Cross*, 666 F.2d 873 (5th Cir. 1982); *Matter of Whitlock*, 449 F.Supp. 1383 (W.D.Mo.1978); *Kelley v. Conwed Corp.*, 429 F.Supp. 969 (E.D.Va.1977); *Matter of Graham*, 6 B.C.D. 539, 7 B.R. 5 (D.Nev.Bkrtcy.1980).

■ Campers Corral was engaged in a retail business selling snowmobile equipment and other related inventory. It also sold mopeds, snowblowers, and parts for mobile homes. In addition, Campers Corral performed repair and customizing services on mobile homes. Bombardier did not offer any evidence to establish that it was the only source of supply for Campers Corral. Nor did Bombardier offer any evidence to establish that any payments allegedly diverted from the corporation for the debtor's alleged personal gain were traceable to funds realized from the sale of Bombardier's inventory.[5] Since the facts do not justify a finding that the debtor was indebted to Bombardier, Bombardier's complaint pursuant to section 523(a)(4) is dismissed.

■ Nor is there any basis for Bombardier's contention that the debtor converted the inventory purchased by Campers Corral and that such conversion created a debt which was nondischargeable pursuant to section 523(a)(6). The security agreement entered into by Campers Corral and

Bombardier to sell its line of clothing, parts, and snowmobile equipment permitted Campers Corral to exercise full dominion and control over the proceeds of sale. The security agreement did not require the corporation to retain the proceeds of sale of the inventory in trust for Bombardier, nor did it impose any other express fiduciary responsibility on Campers Corral. Where a creditor permits commingling and use of proceeds, there is no conversion. *In re Powell*, 3 BCD 410 (E.D.Va.Bkrtcy.1977); *Matter of Burget*, 2 BCD 616 (S.D.N.Y.Bkrtcy.1976). Similarly, as with its claim under section 523(a)(4), Bombardier has not established that the debtor is indebted to it for the unpaid purchase price of the inventory. Since the debtor is not indebted to Bombardier, the section 523(a)(6) complaint must also be dismissed.

An appropriate order to be submitted.

---

exceeded the reasonable rental value of the properties. Additional payments totalling $8,076.23 were made on various business debts and notes which may have inured to the debtor's personal benefit.

5. Of the $60,340.07 in payments questioned by Bombardier, $28,344.12 was paid after April 1, 1980, when Campers Corral had purportedly

ceased to sell Bombardier goods. This amount includes $7,698 paid to Harry Hatcher, *supra*, and $13,000 of the $19,500 in uncashed checks drawn to the debtor for salary. The record also discloses that Campers Corral suffered many thefts during its operation. The record does not disclose, however, what inventory was stolen or its dollar amount.