In re Donald M. CLIFTON and Mary J. Clifton, Debtors.

FORD MOTOR CREDIT COMPANY, Plaintiff,

v.

Donald M. CLIFTON and Mary J. Clifton, his wife, Defendants.

Bankruptcy No. 81–00171 M A.
Adv. No. 81–0227 M.

United States Bankruptcy Court, D. New Mexico.

Sept. 6, 1983.

Jay D. Hertz, Albuquerque, N.M., for plaintiff.

Jennie Deden Behles, Albuquerque, N.M., for defendants.

MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on the First Amended Complaint to Determine Dischargeability of Debt filed by Ford Motor Credit Company (FMCC) against the debtors, Donald and Mary Clifton. Between July 1975 and late 1980, the Cliftons gradually acquired 100% of all issued and outstanding stock in Mt. Taylor Ford, Inc. (Mt. Taylor). Mt. Taylor was originally operated under the name Clear Ford, Inc.; the name was changed in December 1975. In 1979, Mr. Clifton became general manager of Mt. Taylor and became the sole proprietor of S & C Enterprises (S & C). It is the debtors' actions in conjunction with S & C and Mt. Taylor of which FMCC complains.

In 1970, FMCC entered into a wholesale financing plan with Clear Ford, Inc., later Mt. Taylor Ford, under which FMCC would "floorplan," that is, provide interim financing for cars bought by Clear Ford to sell in its retail automotive business. That agreement continued when the business became Mt. Taylor. In 1979, Mt. Taylor fell into financial difficulties which resulted in some breaches of that financing plan. The terms of the plan were such that, as each vehicle was sold by Mt. Taylor, the financed amount, plus the interest which had accrued thereon, was to be immediately paid by Mt. Taylor to FMCC. If a vehicle were sold and FMCC not paid off, that car would have been classified as "sold out of trust." The sum which FMCC claims to be nondischargeable, $119,000.00, is the result of Mt. Taylor's issuing checks to FMCC for vehicles sold, which checks were not honored by Mt. Taylor's bank and therefore FMCC received no monies for the vehicles. FMCC urges two grounds for the nondischargeability claim. The first is that Mt. Taylor was acting in a fiduciary capacity as to the monies received for vehicle sales and the failure to remit funds from the sale of the vehicles was fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4). The second ground is that the sale of the cars subject to a security interest without payment of the debt so secured amounts to a conversion of property which is "willful and malicious injury by the debtor ... to the property" of FMCC and as such is the basis for a finding of nondischargeability under 11 U.S.C. § 523(a)(6).

In determining the existence of fraud or defalcation under § 523(a)(4), this Court is bound by two decisions: *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), and the interpretation of *Davis* by the United States Court of Appeals for the Tenth Circuit in *Allen v. Romero (In re Romero),* 535 F.2d 618 (10th Cir.1976). *Davis* addresses facts which are substantially the same as the facts in the instant case and interprets the section of the Bankruptcy Act which denied discharge for debts arising from fraud or defalcation while acting in a fiduciary capacity,

§ 17(a)(4), Bankruptcy Act of 1898, which was the predecessor of 11 U.S.C. § 523(a)(4). The definition of "fiduciary capacity" was not changed by the Code, 3 *Collier on Bankruptcy* § 523.14 (15th Ed.), and because of its strong similarities, *Davis* must be closely examined.

The debtor in *Davis* was an automobile dealer who "floorplanned" cars through Aetna in an arrangement such as Mt. Taylor had in the instant case with FMCC. The Supreme Court, in determining whether the debtor was acting in a fiduciary capacity, considered the following documents which were delivered to Aetna in conjunction with the loan to the debtor of money with which to obtain vehicles for retail sales: (1) a promissory note; (2) a chattel mortgage covering the automobile; (3) a trust receipt acknowledging receipt of the vehicle, agreeing to hold it as property of Aetna and not to transfer it without Aetna's written consent; and (4) a bill of sale. The Court looked at the documents as part of the financing arrangement, and notwithstanding the separate trust agreement and bill of sale naming Aetna as purchaser, found that the only interest of Aetna in the vehicle was as security for a debt. 293 U.S. at 334, 55 S.Ct. at 154. The Court found that the Act required a technical trust, rather than one implied from a contract, and that a debtor's obligations to a creditor would not rise to the level of those of a trustee merely because the documents so label them. 293 U.S. at 334, 55 S.Ct. at 154. The Court accordingly found the debt dischargeable.

In its interpretation of *Davis,* the Tenth Circuit Court of Appeals had to determine the fiduciary relationship between a contractor and the owner of the building when the owner made advances to the contractor for the purposes of paying materialmen and subcontractors. *In re Romero, supra.* The *Romero* court considered, after acknowledging the *Davis* determination that only technical trusts would result in a nondischargeability finding, the statutes enacted by the State of New Mexico which control and oversee contractors. The Court found that

a New Mexico statute which provided for suspension or revocation of a contractor's license for misapplication of funds advanced to pay materialmen and subcontractors "*clearly* imposes a fiduciary duty upon contractors who have been advanced money pursuant to construction contracts." 535 F.2d at 621 (emphasis added). The Court then found that a fiduciary duty *imposed* by law, rather than *implied* by law as was the case in *Davis,* would serve to establish a fiduciary capacity which would meet the standard for nondischargeability should fraud or defalcation be found.

▪ This Court finds that *Romero* is clearly distinguishable from the instant case. There is no statute controlling the actions of the debtor or imposing sanctions because of the actions complained of by FMCC, and we have, consequently, no fiduciary relationship imposed by law. That being true, *Davis* itself provides the best guidance. The *Davis* court specifically found that a separate trust receipt, delivered by the debtor to a creditor would not serve to transform a debtor-creditor relationship into a fiduciary relationship, even in conjunction with a bill of sale which named the creditor as the purchaser and therefore the owner of the vehicles which were the creditor's collateral. In the instant case, the basis of a fiduciary relationship would have to be fabricated from even more meager cloth. In the automotive wholesale plan signed before the business was taken over by the debtor, the word "trust" appears once, in reference to the manner in which funds were to be held after retail sales of vehicles. *Davis* clearly prohibits the imposition of a fiduciary duty upon that single use of the word "trust," particularly in the absence of evidence of true ownership of the vehicles or funds by FMCC. This Court also notes that the wholesale plan, although assumed by Mt. Taylor, was never signed by debtor Donald Clifton, a fact which would serve to make his individual fiduciary capacity, if possible, even more tenuous.

Based on the above considerations, this Court finds that the debtors were not act-ing in a fiduciary capacity as to FMCC and that the complaint for nondischargeability under 11 U.S.C. § 523(a)(4) must be dismissed.

▪ FMCC's second ground for its complaint of nondischargeability is section 523 of the Code, which provides for denial of discharge of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The cases interpreting this section agree that if the willful and malicious elements are met, a sale of property subject to a security interest without payment of the debt secured by the property will amount to "injury to property." *General Electric Corp. v. Graham, et al. (In re Graham),* 7 B.R. 5, 2 C.B.C.2d 695, 6 B.C.D. 539 (Bkrtcy.D.Nev.1980); *Pioneer Bank & Trust Co. v. Scotella (In re Scotella),* 18 B.R. 975, 8 B.C.D. 1282 (Bkrtcy.N.D. Ill.1980); *Bumbardier Corp. v. Penning (In re Penning),* 22 B.R. 616, 9 B.C.D. 723 (Bkrtcy.E.D.Mich.1982); *Grand Piano & Furniture Company v. Hodges (In re Hodges),* 4 B.R. 513, 2 C.B.C.2d 566, 6 B.C.D. 531 (Bkrtcy.W.D.Va.1980); *United States v. Langer (In re Langer),* 12 B.R. 957, 7 B.C.D. 1323 (D.C.N.D.1981); *Creditthrift of America v. Auvenshine (In re Auvenshine),* 9 B.R. 772, 3 C.B.C.2d 946, 7 B.C.D. 511 (Bkrtcy.W. D.Mich.1981). The more difficult question is what it is that constitutes "willful and malicious." The general approach is that it requires a conscious intent to violate the rights of the creditor, and that mere negligence in money management will not do. *United States v. Langer, supra; Grand Piano & Furniture Co. v. Hodges, supra; General Electric Credit Corp. v. Graham, supra.* The cases in which discharge was denied were cases in which the debtor either sold property which he did not own, *Mileasing Co. v. Allavena (In re Allavena),* 18 B.R. 527, 8 B.C.D. 1250 (Bkrtcy.E.D.Pa.1982), or the court found that the debtor made a deliberate decision to sell secured property and not pay the creditor secured by the property. *Pioneer Bank & Trust Co. v. Scotella, supra; Bombardier Corp. v. Penning, supra.*

In the instant case, this Court cannot find that the debtor intended not to pay FMCC. Certainly the debtor's failure to oversee his business manager is business mismanagement of which the Court must disapprove. Additionally, this Court is troubled by the fact that the debtor did not himself write the checks which did not clear the bank. The debtor testified that he left the money management to others and often did not review the action of his business manager. That scale of involvement in the activity of which FMCC complains is not enough, under § 523, to rise to the level of "willful and malicious."

Based on the above determinations, this Court finds that the debt of the Cliftons to FMCC is dischargeable.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.

An appropriate order shall enter.