In re James F. and Charlotte
NICOLL, Debtors.

ITT DIVERSIFIED CREDIT
CORP., Plaintiff,

v.

James F. NICOLL, Defendant.

Bankruptcy Nos. 83 B 2762, 83 A 1419.

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 20, 1984.

Richard G. Siegel, Chicago, Ill., for debtors.

Faber & Buehler, Elgin, Ill., for ITT Diversified Credit Corp.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter is before the court on the motion of the debtor (Nicoll) to dismiss the plaintiff's (ITT) complaint to determine dischargeability of a debt. The complaint alleges that certain corporate debts are nondischargeable in the debtor's personal bankruptcy pursuant to sections 523(a)(4) and (6) of the Bankruptcy Code. For the reasons set forth in this opinion, the court denies the debtor's motion to dismiss the complaint.

## FACTUAL BACKGROUND

ITT's allegations, which must be taken as true for the purposes of a motion to dismiss, *Southeast Lake View Neighbors v. Department of Housing and Urban Development,* 559 F.Supp. 576 (N.D.Ill.1981), *aff'd.* 685 F.2d 1027 (7th Cir.1982) are as follows: The debtor, James Nicoll, was, at the time of the complaint, the owner, executive vice-president and chief operating officer of Music Corporation Internationale ("MCI"), an Illinois corporation engaged in the distribution of pianos and organs. On December 3, 1981, ITT and MCI entered into an Agreement for Wholesale Financing, which Nicoll executed on behalf of MCI. That document provides in part that "(MCI) agree(s) to hold all chattels and proceeds in trust until complete payment of our indebtedness to you respecting such chattels...." The security interest created by the agreement was perfected by filing with the Illinois Secretary of State on January 12, 1982. ITT alleges that, through Nicoll, MCI has failed to hold those proceeds in trust for ITT. MCI has, to date, failed to pay ITT or otherwise account for proceeds of the sale of the encumbered property to ITT. Presently due ITT is $63,493.78.

ITT has alleged that Nicoll is guilty of defalcation while acting in a fiduciary capacity, cognizable under section 523(a)(4) of the Bankruptcy Code. Further, ITT has alleged that the debt is nondischargeable under section 523(a)(6) because Nicoll has caused willful injury to the property of ITT.

Nicoll has moved to dismiss the complaint alleging that because the security agreement was signed in his capacity as a corporate officer of MCI, he is in no way personally responsible for the debts to ITT.

## ISSUE

Thus, the issue on the motion to dismiss is whether a debtor, by conduct as an offi-

cer of a corporation, may incur liability to a creditor of the corporation which is nondischargeable in his personal bankruptcy.

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Bankruptcy Rule 7012 provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A motion to dismiss may be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *E.g., Jafree v. Barber*, 689 F.2d 640 (7th Cir.1982).

ITT's complaint asserts that a certain debt of MCI is nondischargeable in Nicoll's bankruptcy premised upon two theories. The first is that Nicoll committed "defalcation while acting in a fiduciary capacity" so as to render the debt nondischargeable under section 523(a)(4). Section 523(a)(4) has frequently been viewed as including two elements: 1) fiduciary capacity and 2) defalcation. Moreover, some courts have viewed the issue of whether the debtor acted in a fiduciary capacity to be the threshhold one. *In re Fains*, 37 B.R. 539 (Bankr.E.D.Pa.1984); *In re Niven*, 32 B.R. 354, 356 (Bankr.W.D.Okla.1983).

There are at least two possible ways of establishing fiduciary capacity under section 523(a)(4) in the present context. The first is that the security agreement contained language which created a fiduciary relationship and that the agreement to hold chattels and proceeds in trust for ITT created a fiduciary relationship between ITT which Nicoll breached. However, mere recitation of the words "trust" or "fiduciary" in a contract cannot change a simple debtor-creditor relationship into a fiduciary relationship. *In re Storms*, 28 B.R. 761, 764 (Bankr.E.D.N.C.1983). Rather, the parties must have truly intended to create a fiduciary relationship. Even if a fiduciary relationship between MCI and ITT can be demonstrated, the creditor must be able to show that the obligation is somehow passed through to the debtor personally. Thus, to succeed upon that theory, ITT must demonstrate more than the bare contract language set forth in its complaint.

■ The second context in which a fiduciary relationship under section 523(a)(4), can be established is where it is shown that the corporate officer owes a fiduciary duty to his corporation and may be liable to the corporation or the trustee in bankruptcy for profits made by him at the expense of the corporation. *In re Cowley*, 35 B.R. 526, 528 (D.Kan.1983); *Matter of Penning*, 22 B.R. 616 (Bankr.E.D.Mich. 1982). Under Illinois law, a corporate officer is a fiduciary of the corporation. *Shlensky v. South Parkway Building Corp.*, 19 Ill. 2d 268, 166 N.E.2d 793 (1960); *Karris v. Water Tower Trust & Savings Bank*, 72 Ill.App.3d 339, 27 Ill.Dec. 951, 389 N.E.2d 1359 (1979). The debt so created is nondischargeable in the officer's or director's personal bankruptcy. *Matter of Penning*, 22 B.R. 616 (Bankr.E.D.Mich. 1982); *Matter of Durand Milling Co.*, 9 B.R. 669 (Bankr.E.D. Mich.1981). However, unless the proceeds from the sale of the property can be traced to the officer or director, he is not liable under this theory to each individual creditor who was not paid by the corporation. *In re Cross*, 666 F.2d 873 (5th Cir.1982). If ITT can demonstrate that Nicoll diverted funds of the corporation and that the funds were diverted to the debtor personally, Nicoll may be liable to that creditor and the debt will be nondischargeable pursuant to 523(a)(4). The mere fact that Nicoll signed the security agreement in his capacity as a corporate officer is no defense in such a situation. Therefore, the debtor's motion to dismiss is denied insofar as the complaint is premised upon section 523(a)(4).

■ ITT has also alleged that the debt is nondischargeable pursuant to section 523(a)(6) of the Bankruptcy Code which renders nondischargeable debts for wilfull and malicious injury by the debtor to another person or to the property of another person. 11 U.S.C. Section 523(a)(6)(Supp. V 1981); *United Bank of Southgate v. Nel-*

*son,* 35 B.R. 766 (N.D.Ill.1983). A situation in which encumbered property is intentionally sold and the proceeds disposed of in violation of an express agreement, amounts to a wilfull and malicious conversion. *Matter of Penning,* 22 B.R. 616, 619 (Bankr.E.D.Mich.1982). *See also, United Bank of Southgate v. Nelson,* 35 B.R. 766, 775 (N.D.Ill.1983). Thus, the conduct must be deliberate and intentional. *Id.* at 769; H.Rep. No. 95–595 *reprinted in* U.S.Code Cong. & Admin.News, 5787 (1978). Moreover, the preferred approach is that malice will be implied from the intentional act. *Nelson,* 35 B.R. at 775. Business persons are frequently presumed to know that harm will result from conversion of a secured party's collateral. *In re Eisner,* 35 B.R. 86, 88 (Bankr.N.D. Ohio 1983); *In re Scotella,* 18 B.R. 975 (Bankr.N.D. Ill.1982).

A debtor who actively participates in such a conversion is personally liable and the debt is nondischargeable pursuant to section 523(a)(6). *Matter of Penning,* 22 B.R. 616, 619 (Bankr.E.D.Mich.1982); *In re Schwartz,* 36 B.R. 355, 359 (Bankr.E.D.N. Y.1984).

Therefore, the fact that Nicoll executed the security agreement in his capacity as a corporate officer does not, in and of itself, shield him from liability for corporate debts incurred by wilful and malicious conversion. Although the court has determined that the complaint as filed survives a motion to dismiss, it should again be noted that a motion to dismiss should be denied unless it appears beyond doubt that plaintiff cannot prove some set of facts to sustain a claim. *Jafree,* 689 F.2d 640. Ultimately, exceptions to discharge will be construed liberally in favor of the debtor, and strictly against the creditor in order to effectuate the "fresh start policies of the Bankruptcy Code". *In re Rahm,* 641 F.2d 755 (9th Cir. 1981); *In re Crouse,* 27 B.R. 284 (Bankr.E.D.Mo.1983). The party seeking to except a debt from discharge must prove all material allegations by clear and convincing evidence in order for the court to ultimately determine that the debt is nondischargeable. *In re Carneal,* 33 B.R.

922 (Bankr.Va.1983); *In re DeRosa,* 20 B.R. 307, 311 (Bankr.S.D.N.Y.1982).

The complaint before the court does state a claim under which the debt may be declared nondischargeable provided the proper facts are proven. Therefore, Nicoll's motion to dismiss the complaint is denied.