**In re Chancy Junior SAWYER, Debtor.**

**George A. EBORN, Plaintiff,**

v.

**Chancy Junior SAWYER, Defendant.**

**Bankruptcy No. 94–02226–8–JRL.**
**Adv. No. L–94–00132–8–AP.**

United States Bankruptcy Court,
E.D. North Carolina.

July 12, 1995.

B. Perry Morrison, Wilson, NC, for Plaintiff George A. Eborn.

Edwin M. Hardy, Washington, NC, for Defendant Chancy Junior Sawyer.

### ORDER

J. RICH LEONARD, Bankruptcy Judge.

George A. Eborn ("Eborn"), a judgment creditor of the debtor, brings this adversary proceeding to have his debt declared nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code. This is a core proceeding as that term is defined in to 28 U.S.C.

§ 157(b)(2)(I), and over which this court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a).

This case is before the court on the plaintiff's motion for summary judgment. A hearing of this motion was held on May 10, 1995 in Wilson, North Carolina. For the reasons given below, the plaintiff's motion is granted.

### I. *Undisputed Facts*

Eborn is a seaman formerly employed on the F/V CINDY, a shrimping vessel owned by the debtor/defendant, Chancy Junior Sawyer ("Sawyer"). On May 25, 1989, Eborn was injured when his hand was pinned between a rope and a winch used in the operation of the shrimping nets. He remained out of work and under a doctor's supervision until August 7, 1989. During this time, he incurred lost wages, as well as medical expenses of $11,388.74.

After the accident, Eborn asked Sawyer to pay maintenance, cure, and lost wages as required by the law of admiralty. Sawyer refused, and Eborn brought suit against him in the United States District Court for the Eastern District of North Carolina. Eborn's admiralty claims were eventually brought to trial before the Honorable Charles K. McCotter, Jr., United States Magistrate Judge for the Eastern District.

After a full bench trial, Judge McCotter entered an order on July 9, 1993 finding that Eborn's injuries were not caused by any unseaworthy condition aboard the CINDY. Nevertheless, Sawyer was found liable for maintenance of $1,260, cure of $11,388.74, and lost wages of $2,133.75. In addition, Judge McCotter found that:

Sawyer's attempts to shield himself of liability, denial of any knowledge of the accident, and refusal to pay after the suit was filed constitute willful and arbitrary conduct that justifies an award of both attorney's fees and punitive damages.

*Eborn v. Sawyer,* No. 91–121–CIV–MC (Slip op. at 8, July 9, 1993). On this basis, Sawyer was ordered to pay $1,000 in punitive damages and attorney's fees of $14,404.26.

The federal judgment was docketed with the Clerk of Superior Court of Hyde County, North Carolina on June 7, 1994. Six weeks

later, on July 21, 1994, Sawyer filed a petition for relief under chapter 7 of the Bankruptcy Code. On October 24, 1994, Eborn filed this adversary proceeding seeking to have his judgment debt declared nondischargeable under § 523(a)(6).[1]

## II. *Standard of Review*

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment should be granted if "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## III. *Discussion*

■ Section 523(a)(6) of the Bankruptcy Code excepts from discharge:

(a) ... any debt— ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

11 U.S.C. § 523(a)(6). Here, the debt to plaintiff arises from a judgment that contains a specific finding that the defendant's conduct was "willful and arbitrary." The plaintiff contends that this judgment conclusively establishes that he has suffered a "willful and malicious injury" for purposes of § 523(a)(6).

The defendant counters with an affidavit stating that he was not present when the plaintiff injured his hand, and attesting that he has never willfully or maliciously injured the plaintiff. He also points out that Judge McCotter refused to find that the plaintiff's physical injury was caused by any act or omission on his part, or that the CINDY was unseaworthy in any way. In the defendant's view, Judge McCotter's order establishes only that he willfully failed to pay a debt that is itself dischargeable. This, he argues, is not equivalent to a finding that his conduct was willful and malicious for purposes of § 523(a)(6).

The Fourth Circuit Court of Appeals has held that a prior final judgment may, in some circumstances, prove dispositive of dischargeability proceedings brought under § 523(a). The court explained the reach of res judicata in this context in *M & M Transmissions, Inc. v. Raynor (In re Raynor),* 922 F.2d 1146 (4th Cir.1991).

> To preclude a debtor from litigating an issue dispositive of discharge, the record of the case giving rise to the judgment debt must show that the issue was actually litigated and determined by a final valid judgment in an earlier proceeding and that it was necessary to the decision.

922 F.2d 1146, 1149 (citations omitted). The bankruptcy court is instructed to make these determinations "with particular care." *Combs v. Richardson,* 838 F.2d 112, 113 (4th Cir.1988).

Judge McCotter's July 9, 1993 order was entered after a bench trial before the court. The findings of fact and law contained in his order are the product of litigation, and were reduced to a final judgment binding upon the parties. Accordingly, the doctrine of *res judicata* precludes this court from relitigating any issues resolved in Judge McCotter's order.

The July 9 order contains two separate sets of findings that pertain to the defendant's conduct. First, Judge McCotter found that the plaintiff's physical injury was not caused by any unseaworthy condition aboard

---

**1.** Eborn originally asserted a secured claim against Sawyer in the underlying bankruptcy case. This prompted Sawyer to file counterclaims in this adversary proceeding to avoid Eborn's judgment lien under §§ 522(f)(2) and 547. This issue was addressed collaterally on January 18, 1995, when the court denied an objection to Sawyer's exemption of the affected property. Two days later, Eborn filed an amended proof of claim conceding that his claim is unsecured. This action effectively disposes of Sawyer's counterclaims, and these are, accordingly, dismissed as moot.

the defendant's boat. Second, he held that the defendant's refusal to pay maintenance and cure was willful and arbitrary. As instructed by *Combs v. Richardson,* the court will carefully examine each of these findings to determine whether they correspond to the issue raised in this adversary proceeding.

### A. *Physical Injury*

■ Judge McCotter refused to find the defendant directly liable for the injury to the plaintiff's hand. Indeed, he found that the plaintiff had failed to produce any evidence that established the cause of his accident.

> ... Eborn has not shown that Sawyer breached his duty to provide a winch drum that was reasonably safe for its intended use.... Eborn does not know how the accident occurred. His assumption about the cause of the accident alone does not convince the court that the unseaworthy condition [assumed above] caused the accident nor is the court capable of making this inference.

(Slip op. at 4.)

These findings are quite specific and are directly on point. They demonstrate that the plaintiff was given a full opportunity to establish the cause of his injury, and was unable to link it to any act or omission by the defendant. It follows that any subsequent effort to prove that the plaintiff's physical injury was caused by the defendant's willful and malicious conduct is precluded.

### B. *Refusal to Pay Maintenance and Cure*

■ Taken together, maintenance and cure represent a shipowner's duty to care for seamen who become injured or ill while in his service. Maintenance is the seaman's right to food and lodging "comparable to that to which [he] is entitled while at sea." *Calmar Steamship Corp. v. Taylor,* 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938). Cure is "care, including nursing and medical attention during such period as the duty continues." *Id.* The shipowner's obligation to pay maintenance and cure is "of ancient vintage," and is a well-established tenet of general maritime law in the United States. Thomas J. Schoenbaum, *Admiralty and Maritime Law* 159 (1987); *see also The Osceola,* 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903).

■ In his July 9 order, Judge McCotter found that the defendant had a duty to provide maintenance, cure, and lost wages to the plaintiff. He further found that the defendant, despite learning of the plaintiff's injury soon after it occurred, denied knowledge of the accident and refused to pay maintenance and cure. Finally, he found that the defendant had attempted to disclaim liability by posting a sign on the CINDY warning seamen that he would not be responsible for their injuries. Judge McCotter found that these actions constituted willful and arbitrary conduct that justified an award of attorney's fees and punitive damages.

■ Under maritime law, a shipowner's failure to pay maintenance and cure is an independent tort that renders the shipowner liable for any aggravation of the seaman's injury. *See, e.g., The Iroquois,* 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955 (1904). Moreover, if the shipowner's failure to pay is willful and arbitrary, the seaman may be entitled to attorney's fees and punitive damages. *Holmes v. J. Ray McDermott & Co., Inc.,* 734 F.2d 1110 (5th Cir.1984); *Stewart v. Steamship Richmond,* 214 F.Supp. 135 (E.D.La.1963).

Consistent with these rules, Judge McCotter's order treats the defendant's refusal to pay maintenance and cure as a distinct wrong, separate from any physical injury suffered by the plaintiff. In addition, the judge finds that the defendant's attempts to evade this obligation were willful and arbitrary, justifying a separate award of costs and damages.

■ Section 523(a)(6) excepts from discharge any debt that can be characterized as a willful and malicious injury. Courts have generally held that this section does not require proof of actual malice, but only of "a deliberate and intentional act which necessarily leads to injury." Lawrence P. King, 3 *Collier on Bankruptcy* § 523.16, p. 523–129 (1993). Nondischargeability under this subsection is premised on the debtor's intent to injure, not on whether the debtor's actions were motivated by "personal hatred, spite or ill-will." *Id.*

The bloodless nature of the injury contemplated by § 523(a)(6) is demonstrated by the fact that the statute extends beyond personal injuries to include injuries to property. Indeed, a number of courts have held claims based on the intentional conversion of another's property to be nondischargeable under this section. *See Security Bank of Nevada v. Singleton,* 10 C.B.C.2d 429, 37 B.R. 787 (Bankr.D.Nev.1984); *Bombardier Corp. v. Penning (In re Penning),* 22 B.R. 616 (Bankr.E.D.Mich.1982).

Judge McCotter's order establishes that the defendant's refusal to pay maintenance and cure was willful and arbitrary as a matter of admiralty law. However, there are no reported cases addressing whether a shipowner's refusal to pay is also a willful and malicious injury for purposes of § 523(a)(6). After a careful consideration of the policies protected by § 523(a)(6), this court concludes that a shipowner's knowing refusal to pay maintenance and cure to an injured seaman is the sort of willful and malicious injury contemplated by the statute.

Admiralty law elevates a shipowner's obligation to pay maintenance and cure to a special status, beyond his obligation to repay ordinary debts. It is not, as the defendant argues, analogous to the bad faith failure to repay a normal claim. Rather, under admiralty law, the failure to pay maintenance and cure is an independent tort, itself compensable with punitive damages.

Judge McCotter has found that the defendant willfully and arbitrarily failed to pay maintenance, cure, and lost wages to the plaintiff. That finding is binding in this proceeding, and, in this court's view, is sufficient to establish that the plaintiff's debt is nondischargeable under § 523(a)(6).

### Conclusion

Based upon the foregoing, the defendant's counterclaims are dismissed as moot, and the plaintiff's motion for summary judgment is granted.

So Ordered.