In the Matter of Elmer Lawrence **GRAHAM, Jr. and Zelma Louise Graham, Debtors,**

**Graham & Blonigan, Inc., a Nevada Corporation, dba Bates & Bell T. V. & Appliances, Debtor,**

**Richard John Blonigan, Debtor.**

**GENERAL ELECTRIC CREDIT CORPORATION, a corporation, Plaintiff,**

v.

**Elmer Lawrence GRAHAM, Jr.; Zelma Louise Graham; and Graham & Blonigan, Inc., dba Bates & Bell T. V. & Appliances, Defendants.**

**GENERAL ELECTRIC CREDIT CORPORATION, a corporation, Plaintiff,**

v.

**Richard John BLONIGAN, Defendant.**

**Bankruptcy Nos. 79–00469, 79–00468 and 80–00020.**

**Adv. Nos. 80–0007, 80–0010.**

United States Bankruptcy Court, D. Nevada.

June 19, 1980.

Harold A. Swafford, Reno, Nev., for debtors, Grahams and Graham & Blonigan.

Sylvia J. Thompson, Reno, Nev., for debtor, Blonigan.

H. Dale Murphy, Reno, Nev., for plaintiff.

## OPINION AND DECISION

BERT M. GOLDWATER, Bankruptcy Judge.

These consolidated adversary cases were filed by General Electric Credit Corporation (GECC) to have a collateral deficiency in its flooring inventory declared nondischargeable in the personal bankruptcies of Mr. and Mrs. Elmer Graham (Grahams) and Richard Blonigan (Blonigan) who were the chief stockholders, officers and directors of Graham & Blonigan, Inc. doing business as Bates & Bell T. V. & Appliances (B&B).

On March 2, 1979, B&B signed a security agreement with GECC which provided that all inventory would be subject to a security interest. The established method of business was that each item of inventory would be listed by GECC and B&B was to pay the cost promptly (usually on a weekly basis). From time–to–time GECC inspected the inventory at the Reno store of B&B to be certain that all inventoried items were present or, if not, there would be a collateral deficiency immediately due and payable.

News of B&B's bankruptcy alerted GECC to inspect the inventory in October 1979 about the time of filing herein. It was discovered that $14,682 had been "sold out of trust" and was not in the store.

At the time of execution of the security agreement by B&B in its corporate capacity, each of the principals, Grahams and Blonigan, signed personal agreements that they "guarantee the punctual payment and prompt performance of any and all indebtedness or obligation of any kind which the Dealer may now owe or which it may at any time hereafter owe to GECC." [1]

The security agreement provided that B&B upon the sale of any inventory would "hold all proceeds of the sale of such unit in trust".

No trust deposit or special account was set up or requested by GECC and none was maintained by B&B which had two commercial accounts, essentially one for payroll and another for general expenses.

There was no evidence as to what happened to the inventory which was unaccounted for. Each sale as made required a sales slip, but there was no proof that there were sales slips for the missing items. Many of the items were large appliances which could not be easily removed from the premises. Smaller items, such as portable radios, could have been shoplifted.

GECC's complaints charge that debtors converted the collateral to their own use.

■ Former Section 17(a)(2) of the old Bankruptcy Act excepted from discharge debts "for willful and malicious conversion of the property of another". The new Code, which applies to this case, does not

---

1. Mr. Graham signed in error as "president".

specifically include a debt for conversion of property among the enumerated debts that are not dischargeable. It is, however, the settled interpretation that Section 523(a)(6) includes willful and malicious conversion.[2]

 Hence, a conversion under the Code must be willful and malicious. Mere negligence is insufficient. There was no proof here that the Grahams or Blonigan actually removed inventory. True, the inventory has disappeared and although no sales slips were produced, it is probably true as testified by Blonigan that the inventory was sold, the money deposited in the general account and used by B&B for general operation expenses. That is not willful and malicious, the meaning of which is defined in Para. 523.16[1] of 3 *Collier on Bankruptcy* (15th ed. 1979) at p. 523–116, as follows:

"Injuries within the meaning of the exception are not confined to physical damage or destruction; but an injury to intangible personal or property rights is sufficient.[11] Thus the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception.[12] On the other hand; a technical conversion may very well lack any element of willfulness or maliciousness necessary to except the liability from discharge.[13] "

The leading case of *Davis v. Aetna Acceptance Co.* (1934) 293 U.S. 328 [55 S.Ct. 151, 79 L.Ed. 393] is generally cited for the well settled proposition that mere failure to pay over money received from the sale of secured property under a security agreement arrangement is not a willful and malicious conversion. It is cited and quoted in 3 *Collier on Bankruptcy* (15th ed. 1979) at p. 523–123. There an automobile was sold "out of trust" under a flooring agreement by a salesman of an auto dealer. The price was received but not paid over to the secured party. Instead the dealer filed for bankruptcy and did not account for the cost of the vehicle. The lower court found there was no willful, malicious or criminal intent, but held there was a conversion of another's money or property. The trial court was affirmed by the Supreme Court of Illinois. The Supreme Court of the United States reversed holding that in the absence of willful and malicious conduct, a discharge will stand as against a showing of conversion without the aggravated features.

There is no showing of willfulness or maliciousness here.

In argument counsel for GECC sought an alternative to nondischargeability, although not specifically pleaded. The thrust of the contention is that section 523(a)(4) provides nondischarge of debts "for fraud or defalcation while acting in a fiduciary capacity", and that inasmuch as B&B was to hold all proceeds in trust the individual debtors would be liable for breach of trust.

A trust clause inserted in a document which sets up a debtor–creditor relationship in an effort to assure the debtor's performance of its obligation does not create a trust. A fiduciary relationship requires a separate account. Separate accounts in this case were either general or payroll accounts. [*Lord's, Inc., v. Maley* (7th Cir. 1965) 356 F.2d 456; also as to credit sales *Wohl Shoe Company v. Elliott* (9th Cir. 1967) 388 F.2d 883.]

Let judgment be entered for defendants.

---

2. Section 523 provides in part:

"A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt–

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;"

Subparagraph (6) of Section 523 covers a "willful and malicious conversion". See 3 *Collier on Bankruptcy* (15th ed. 1979) Para. 523.-16[3] at p. 523–123.