In re Thomas Carlton **HODGES**, Debtor.

**GRAND PIANO & FURNITURE CO., Plaintiff,**

v.

**Thomas Carlton HODGES, Defendant.**

**Bankruptcy No. 7–80–00029.**
**Adversary Proceeding No. 7–80–0029.**

United States Bankruptcy Court,
W. D. Virginia.

May 8, 1980.

William P. Wallace, Jr., P.Q., Eggleston, Glenn & Feldmann, Roanoke, Va., for plaintiff.

Tonita M. Foster, P.D., Roanoke, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

Plaintiff, Grand Piano & Furniture Company, filed its Complaint seeking nondischargeability of its debt owing by Thomas Carlton Hodges, Debtor-Defendant, pursuant to 11 U.S.C. § 523(a)(6).

The facts appear as follows: the Defendant, on or about March 3, 1979, purchased from the Plaintiff a stereo record player and executed a security agreement therefor. The purchase price was $789.90, and with a cash payment of $100.00 plus sales tax, the net unpaid balance was $721.50, which in addition to credit life insurance, finance charges resulted in a final contract price of $972.10 with payments of $49.00 per month. By virtue of the security agreement, the Plaintiff retained a security interest in the property even though a financing statement was also recorded in the local clerk's office.

The Complaint alleged that the Defendant made the purchase and in the security agreement agreed not to sell, pledge, pawn or remove the goods from the address shown without the consent of the Plaintiff. The security agreement consists of one page, front and back form, printed thereon. The front page consists primarily of blanks for information concerning the purchase. The back page consists of small print terms of the security agreement. The evidence further showed that the Defendant, in June, 1979 became financially stressed because of illness and lack of income thereupon was unable to make his regular monthly payments upon his residence and the support of his family. The Defendant testified that his wife sold the stereo at a flea market and the proceeds therefrom were used to make house payments and purchase food and support for his family; that the Defendant did not realize that the Plaintiff held a security interest in the goods but did understand that certain rights in the goods were possessed by the Plaintiff; that he did not read the security agreement and following the date of the sale continued to make some payments upon the account at the Plaintiff's store.

The issue before the Court is whether or not the facts herein stated are sufficient within the statutory language so as to have declared the debt nondischargeable and judgment issued thereon.

11 U.S.C. § 523(a)(6) provides as follows: A discharge does not discharge an individual debt

"for willful and malicious injury by the debtor to another entity or to the property of another entity;"

Under the Bankruptcy Act of 1898, as amended, this problem was controlled by § 17(a)(2). Act § 17(a)(2) reads in pertinent part:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as (2) are . . . for willful and malicious conversion of the property of another. 11 U.S.C. § 35(a)(2)

The phrase "willful and malicious injury" was intended to include "willful and malicious conversion." See 3 *Bkr.L.Ed.* § 22:35 citing 95 Cong.Rec. H 11096 (Sept. 28, 1978); Bkr.L.Ed., Legislative History § 81:3.

However, with the change in bankruptcy law in 1978 came a change in the standards applicable in construing Section 523(a)(6). 3 *Collier on Bankruptcy* ¶ 523.16[3] (15th ed. 1979). It had become well-settled by case law prior to the enactment of the Bankruptcy Reform Act of 1978 that the proper construction to be placed on the parallel provision to Bankruptcy Reform Act § 523(a)(6)—Section 17(a)(2) of the Act— was the standard of "reckless disregard." *See Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902). It was clear that an injury to an entity or property could have been malicious if it was wrongful and without just cause or excessive, even absent personal hatred, spite, or ill-will. *See Tinker, supra*, where the Court said:

In order to come within that meaning as a judgment for a wilful and malicious injury to a person or property, it is not necessary that the cause of action be based upon special malice, so that without it the action could not be maintained.

Thus, the conversion of one's property without his knowledge or consent, done intentionally and without justification or excuse to the other's injury, was considered a willful and malicious injury within the meaning of the Section 17(a)(2) exception. 3 *Collier* ¶ 523.16[1] (15th ed. 1979) (citing numerous *Tinker v. Colwell* progeny as authority).

Indeed, the Fourth Circuit Court of Appeals in the decision *Bennett v. W. T. Grant Co.*, 481 F.2d 664 (4th Cir. 1973) upheld the *Tinker* standard stating that while not every act of conversion was necessarily "willful and malicious," if such act was done deliberately and intentionally in *knowing disregard* of the rights of another, the debt was not dischargeable. The *Tinker v. Colwell* "knowing disregard" standard had surfaced in the Fourth Circuit and the law was settled. However, in the House and Senate Reports involving legislative discussion of the implementation of the new Bankruptcy Code, the "knowing disregard" standard was expressly overruled. H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977). S.Rep. No. 989, 95th Cong., 1st Sess. 77–79 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787 ("To the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled." 3 *Bkr.L.Ed.* § 22:35 citing Legislative History § 82:17). Collier notes the same fact: "The 'reckless disregard' standard and the cases that uphold that standard in construing section 17(a)(2) of the *Bankruptcy Act* are not applicable in interpreting section 523(a)(6)." 3 *Collier* ¶ 523.16[3] (15th ed. 1979).

■ In light of the nonallowance of the *Tinker* standard and its Fourth Circuit companion, we are compelled to review non-*Tinker* law. Cases had held that though "willful" had been construed to mean deliberate or intentional, it was not as used in the 17(a)(2) exception, restricted to the meaning which it may have in criminal prosecutions. 9 *Am.Jur.*2d "Bankruptcy", § 786. Any act done unlawfully and maliciously was necessarily wilfully done. *Id.* But, the reverse does not necessarily follow: any act which is done wilfully is not necessarily done maliciously.

Following the long line of decisions relying on *Tinker*, 9 *Am.Jur.*2d "Bankruptcy" § 786 notes:

A malicious act within the meaning of the exception, is an unlawful or wrongful

act done intentionally without just cause or excuse. While a wilful (sic) act is not a malicious act *unless the intent is to do harm* or *to act in utter disregard of another's rights*, it is not necessary that one be incited by a malevolent or malicious motive, such as is required to give color to a criminal act, in order that his act may be malicious within the meaning of the exception. (emphasis added).

Interestingly, 9 *Am.Jur.2d* § 786 cited *Tinker v. Colwell* as controlling this predominant view. The encyclopedia continues:

'Wilful (sic) and malicious' is equivalent in meaning to 'wilful and wanton.' It is sufficient to supply the element of a malicious injury if the act be such that malice may be implied therefrom. An act may be willful and malicious even in the absence of hatred or ill-will, and it is not necessary, in order to invoke the exception, to show special or express malice.

Now that the "reckless" or "utter disregard" standard has been obviated by the Congressional language in the Legislative History, there recurs the need to show "maliciousness" in addition to "willfulness" in order to come within the § 523(a)(6) exception. Without the *Tinker* standard, that leaves but one choice "intent to do harm." The Debtor testified under oath that he harbored no ill-will, malice or hatred for the Plaintiff. He admitted on cross-examination that he knew that Grand had certain "rights" including the right of Grand to repossess the collateral. It cannot be safely said that on the facts presented Debtor bore the "new" maliciousness required by § 523(a)(6). Maliciousness can no longer be implied; nor does it encompass the looser standard enunciated in *Tinker v. Colwell*.

The leading decision in the non-*Tinker* area held that a claim founded on a mere technical conversion without conscious intent to violate the rights of another, and under mistake or misapprehension, is dischargeable. See 3 *Collier* ¶ 523.16[3] (15th ed. 1979) citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1935). In *Davis*, an automobile dealer purchased a car by means of a loan of money, upon which to secure it, he gave to the lender his promissory note, a chattel mortgage, a trust receipt agreeing to hold the car as the lender's for storage and agreeing not to sell, pledge, or otherwise dispose of it without the lender's written consent, and finally, a bill of sale. In knowing contravention to its agreements, the dealer sold the automobile and received the proceeds, just as in the case at bar, the Debtor sold the stereo and received the proceeds. In *Davis*, the parties to the lawsuit stipulated that the sale was without concealment. Instead of remitting the proceeds of the sale to the creditor, the dealer converted the funds to its own use and subsequently filed a petition in bankruptcy. The Supreme Court of the United States held that the conversion, termed by the Court a "technical conversion" lacked the elements of willfulness and maliciousness necessary to except the debt from discharge:

There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception. [Referring to § 17(a)(2) of the Act.] Such a case was *McIntyre v. Kavanaugh*, 242 U.S. 138 [, 37 S.Ct. 38, 61 L.Ed. 205] where the wrong was unexcused and wanton. But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or maliciousness.

In *Davis*, the Court held that malice must encompass "an intent to harm" the creditor.

Although there is no question as to what the Debtor here thought, that he did not intend to harm Plaintiff, the most his actions may indicate is negligence. But the requisite element of maliciousness is not proved by a showing of mere negligence. Courts have not been eager to recognize negligence as meeting the standards of "willful and malicious."

A claim or judgment based merely upon negligence does not necessarily constitute a "willful and malicious injury within the ex-

ception." 3 *Collier* ¶ 563.16[1] (15th ed. 1979) As the court said in *Francine v. Babayan*, 45 F.Supp. 321 (E.D.N.Y.1942), (auto accident): "There is a difference between . . . negligence and willful and malicious injuries." That should come as no surprise. The Debtor in the instant proceeding did not testify that he accidentally sold his stereo equipment; he did so deliberately so that he could raise enough money to meet his monthly mortgage payment on his mobile home which was then due and support his family. If he did not sell the goods accidentally, then logically, he must have converted them deliberately and intentionally, or possibly wilfully.

■ But that explains only half the problem. Code Section 523(a)(6) reads in the conjunctive, not the disjunctive: "willful and malicious." While he may well have willfully sold the secured property, he did not appear to do so maliciously. Testimony from the Debtor indicated that he did not intend to hurt or harm Grand Piano by selling the goods; he only meant to raise money to make his monthly mortgage payment. He clearly intended to continue payments to Plaintiff if able. We cannot circumvent that direct testimony absent testimony to the contrary. We cannot hypothesize anything further about the Debtor's intent. We must therefore find that he did not sell the property "maliciously".

While the Debtor may well have been guilty of "conversion" under the *Tinker v. Colwell* reasoning that such conversion was tantamount to a "reckless disregard" of one's duty, he is clearly not chargeable under the now-different standard of "willful and malicious injury" according to both the House and Senate Reports. [H.R.Rep. No. 595, 95th Cong. 1st Sess. 363 (1977); S.Rep. No. 989, 95th Cong., 1st Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.]

The burden of proof in this case is upon the Plaintiff. See *Federal Bankruptcy Rule* 407. Each case affecting dischargeability must rest upon its own individual facts. The Court in this case cannot say that the burden of the Plaintiff has been sustained. Accordingly it is

ADJUDGED AND ORDERED

that the prayer of the Complaint be denied and that the debt sued for herein be, and the same is hereby adjudged dischargeable and the discharge shall accordingly issue.