In re Paul F. FINNIE, Debtor.

WEST SPRINGFIELD M. E. CREDIT UNION, Plaintiff,

v.

Paul F. FINNIE, Defendant.

Bankruptcy No. 79–2094–G.
Adv. No. 4–80–002–G.

United States Bankruptcy Court,
D. Massachusetts.

April 10, 1981.

Philip J. Hendel, Springfield, Mass., for plaintiff.

William J. Lyons, West Springfield, Mass., for defendant.

## MEMORANDUM AND ORDER ON COMPLAINT TO ESTABLISH NONDISCHARGEABILITY

PAUL W. GLENNON, Bankruptcy Judge.

This matter was originally brought before the court as a complaint to have a debt excepted from discharge in bankruptcy pursuant to § 523(a)(2) of the Bankruptcy Code. 11 U.S.C. § 523(a)(2). At trial, counsel for the plaintiff indicated that he wished to proceed on the strength of § 523(a)(6), rather than § 523(a)(2). On that basis, a trial commenced and a full hearing ensued. The court's decision today reflects only an analysis of the applicability of § 523(a)(6) to the facts of this case.

This complaint was filed on behalf of the plaintiff, the West Springfield Municipal Employees Credit Union (the "Credit Union"), to have a debt owed to the Credit Union by the defendant, Paul Finnie (the "Debtor"), excepted from discharge. The Debtor is a policeman in the town of West Springfield and, as a means of supplementing his income, he bought and sold used cars. The record indicates that the Debtor began "moonlighting" in his own business sometime in late 1976 or early 1977. Over a period of approximately a year and a half he sold nearly sixty used automobiles. One of those vehicles was a 1976 Fleetside Truck, which was purchased in late December of 1977, and sold sometime thereafter in 1978.[1] The Debtor obtained a loan from the Credit Union to purchase the truck, and executed a document entitled "Promissory Note/Disclosure/Security Agreement".

There has been no challenge to the validity of that document, and I find it to be a validly executed promissory note and security agreement. The collateral for the loan was the truck. The complaint by the Credit Union arises as a result of Mr. Finnie having failed to obtain a title certificate for the truck or some evidence of the Bank's secured position prior to selling it. Because of that fact, the Credit Union is no longer collateralized and stands to collect only upon a dividend in bankruptcy. The Debtor subsequently filed for relief under the Bankruptcy Code (11 U.S.C. §§ 101 et seq.) on November 13, 1979. The Credit Union asks that its debt be excepted from discharge pursuant to § 523(a)(6) because of the actions of the Debtor.

Section 523 of the Code (11 U.S.C. § 523) deals with exceptions to discharge and reads:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

The legislative history of § 523(a)(6) indicates that the phrase "willful and malicious injury" covers a willful and malicious conversion. 124 Cong.Rec. H11,095–6 (Sept. 28, 1978); S17,412–13 (Oct. 6, 1978). It also indicates that the House version of the bill was adopted by Congress. The House version of § 523(a)(6) indicates that "willful" means deliberate or intentional, and to the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902), held that a looser standard was intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 363, U.S. Code Cong. & Admin.News 1978, 5787.

Thus, the willful and malicious conversion of another's property by a debtor can operate to except from discharge the

1. The Debtor wasn't clear whether the vehicle was sold in May 1978, or sometime after that date.

injury that results. In order to fall within the exception, the injury must have been willful *and* malicious. An injury to an entity or property may be malicious injury within the exception if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. 3 Collier on Bankruptcy ¶ 523.16[1] (15th Ed.1980). On the other hand, a technical conversion may very well lack any element of willfulness or maliciousness necessary to except the liability from discharge. Ibid. A claim founded on a mere technical conversion without conscious intent to violate the rights of another, and under mistake or misapprehension, is dischargeable. 3 Collier on Bankruptcy ¶ 253.16[3] (15th Ed.1980); See also, *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Mr. Justice Cardozo, speaking for the Supreme Court in *Davis,* made it clear, that:

> [A] willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. *Davis v. Aetna Acceptance Co.,* supra at 55 S.Ct. 332 at 153.

The rule of *Davis* would appear to be one which requires an examination by the Court of the particular circumstances surrounding the conversion. A number of other courts have interpreted *Davis* in just that way. See, *In re Hinkle,* 9 B.R. 283 (Bkrtcy.D.Md. 1981); *In re Hodges,* 4 B.R. 513 (Bkrtcy.W. D.Va.1980); *In re Graham,* 7 B.R. 5, 6 B.C.D. 539 (Bkrtcy.D.Nev.1980); *In re Hawkins,* 6 B.R. 97, 6 B.C.D. 1054, (Bkrtcy. W.D.Ky.1980).

In *Hinkle,* supra, it was held that under § 523(a)(6), a creditor is required to show that the debtor acted deliberately *and* with an intent to harm the creditor or his property before the debt will be found nondischargeable. Likewise, the bankruptcy court in *Hodges,* citing *Davis,* held that malice "must encompass an intent to harm the creditor". *In re Hodges,* supra, 4 B.R. at 516; See also, *In re Bryson,* 3 B.R. 593, 6 B.C.D. 199 (Bkrtcy.N.D.Ill.1980).

*In re Graham,* supra, cited *Davis* "for the well settled proposition" that:

> Mere failure to pay over money received from the sale of secured property under a security agreement arrangement is not a willful and malicious conversion. *In re Graham,* supra, 7 B.R. 5, 6 B.C.D. at 540.

In *Graham,* certain inventory was sold which was subject to a security interest and, in violation of the agreement between the parties, the proceeds of sale were not placed in a trust account as was required. The court held that in the absence of other circumstances, this alone was not sufficient for a showing of willfulness or maliciousness. In *Hodges,* a debtor sold stereo equipment which was subject to a security interest. There it was held that the debtor's disposal of collateral may have been willful, in the sense that it was not an accident, but it was not malicious where no intent to do harm was shown and where he intended to continue his payments to the creditor if able.

■ Upon the foregoing, it seems clear to this court that there is no "willful or malicious" conversion in the case presently before it. The Debtor was an unsophisticated businessman who sold used cars as a means of supplementing his income. The testimony of the Debtor was that he was not in the habit of registering the vehicles he purchased, but rather, he ran them off of repair plates. All his sales were on a cash basis. In December of 1977, he bought a Fleetside Truck with money loaned by the Credit Union. The Debtor admits that he never applied for a certificate of title for the vehicle and that he used the proceeds when he sold the truck to buy a new one. However, he also testified that he did not read the terms of his security agreement and that the Credit Union did not formally request a certificate of title from him until after the vehicle was sold. Thus, while the Debtor did not comply with the terms of his agreement with the Credit Union and he may be guilty of a technical conversion, I do

not believe his actions would qualify as a *malicious* conversion. This finding is amplified by the fact that the Debtor remained current in all his loan payments for at least a year after he sold the truck, and up to the date he filed for bankruptcy. From this, I conclude that the Debtor in no way intended to harm the Credit Union by his actions, but acted out of ignorance or, possibly, expedience, but at all times had every intention of repaying his loan balance. Therefore, I would find for the defendant and against the plaintiff. Judgment shall enter accordingly.