**In re Charles L. DEVER, Julia A. Dever, Debtors.**

**UNITED STATES of America (Farmers Home Administration) Plaintiff,**

v.

**Charles L. DEVER, Julia A. Dever, Defendants.**

**Bankruptcy No. 3–82–00276(B). Adv. No. 3–82–0219.**

United States Bankruptcy Court, W.D. Kentucky.

June 15, 1984.

---

Philip Dunnagan, Louisville, Ky., for plaintiff.

Mark T. Watson, Elizabethtown, for debtors.

John W. Ames, Louisville, Ky., trustee.

## MEMORANDUM OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This adversary proceeding comes before the Court seeking a determination the debt due and owing Farmers Home Administration (FmHA) to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6). At issue is whether debtors' actions constitute willful and malicious injury to the property of the creditor, thereby precluding said debt from being discharged. For the reasons herein-

after set forth, the creditor's petition for relief is denied and the debt due and owing FmHA is declared to be discharged.

The background of the credit relationship between the parties and the facts leading to the dispute here considered are as follows. Commencing in March, 1976 and continuing through June, 1980, a series of loans were applied for and approved amounting in the aggregate to approximately $137,000.00. Said loans were collateralized by a secured interest in debtors' realty, equipment, and dairy cows. The petition in bankruptcy was filed on February 8, 1982, at which time the balance due FmHA was $131,036.51. Under the repayment program for the loans established in June of 1980, debtors remitted $1500.00 per month from the proceeds of their dairy operation, and the debtors were substantially current under this schedule at the time of their petition.

FmHA's complaint alleges that the debtors' actions immediately preceding their petition constitute a willful and malicious conversion of its collateral necessitating a finding that the debt is nondischargeable. The complaint focuses on: (1) the disposal of thirty-six (36) cows on January 19–21, 1982 by the debtors, and (2) the livestock subject to the security interest not being fully accounted for.

The following constitutes findings of fact and conclusions of law based on a review of the pleadings, briefs filed by the parties, and depositions included by agreement as part of the proof on the issues presented.

It is uncontroverted that debtors sold thirty-six (36) cows at recognized markets during the period January 19–21, 1982, receiving a total of $18,449.87. The sum of $9,003.00 from the sale proceeds was delivered by debtors' attorney to the trustee and ultimately remitted to FmHA. The balance of the proceeds was used by the debtors to pay three unsecured creditors, and none of the proceeds was retained or used for their personal needs. As to these allegedly preferential transfers, the trustee should proceed against each recipient and

effectuate a full recovery of the proceeds from the sale of FmHA's collateral.

In June of 1980, the time of the last loan, debtors indicated a total of fifty (50) head subject to FmHA's security interest, but at the sale of the livestock in January of 1982, only thirty-six (36) head were disposed of, leaving fourteen (14) head unaccounted for.

The proof of record establishes that the fourteen (14) head of dairy cows unaccounted for in the period June, 1980 through January, 1982 were the result of two having died in early January, 1982, and the other twelve having been sold when no longer productive. When such sales occurred, all the proceeds were used to purchase more expensive producers. This practice resulted in a head count reduction but did not decrease the value of the creditor's security, all such proceeds having been reinvested into the herd and thereafter the entire remaining herd (36) being sold for $18,449.87.

 While there is evidence the debtor did represent to FmHA that fifty head still existed in January, 1982 to support a renewal loan application, no action thereon was taken nor was debtors' explanation of the diminished herd rebutted. It is well established that the burden of proof is on the creditor to sustain a finding that the debtors are guilty of willful and malicious conversion of its collateral. Simply stated, as to the fourteen head, the creditor has failed to maintain its requisite burden.

It bears noting the facts leading up to the precipitous actions taken by the debtors in selling the remaining herd in January, 1982. The record reflects the debtors' dairy operation to be fairly typical within the industry, experiencing the financial strain prevalent throughout the country, and struggling to maintain the repayment schedule from the dairy operation. While the account was in arrears, it had not reached a terminal state, and FmHA was favorably considering extending the account another year. The debtors then experienced a mortal blow. With temperatures at fifteen degrees below zero their milk cooler equipment broke. For three

days the milk production was lost. With no funds to repair the equipment and confronted with the urgency of feeding or selling the herd, the dairy operation was terminated and the thirty-six head grouped by lot for sale in normal marketing outlets.

■ It is the opinion of the Court that confronted with the limited alternatives available, the debtors' actions were justified and the herd disposed of in a reasonably prudent manner.

It is unquestioned that debtors' action of using part of the proceeds to selectively pay three unsecured creditors was poor judgment and improper. Whether such conduct is a willful and malicious injury as defined in 11 U.S.C. § 523(a)(6) will now be addressed.

■ It is well settled the burden of proof is on the creditor to sustain the finding of nondischargeability. The terms "willful" and "malicious" as set forth in 11 U.S.C. § 523(a)(6) has been the subject of intensive analysis in decisional application. Yet from these decisions has emerged some guidelines of general acceptability. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or maliciousness. *In re Hodges*, 4 B.R. 513 (W.D.Va.1980). Where there is no intent to harm the creditor the requisite elements have not been established. Debtor was unsophisticated, remained current on payments after sale of collateral, and at all times had intent to repay loan balance. *In re Finnie*, 10 B.R. 262 (D.Mass.1981). Mere failure to pay over money received from sale of collateral held not a willful and malicious conversion. *In re Graham*, 7 B.R. 5, 6 BCD 539 (D.Nev.1980). Continued payments to creditor after sale of its collateral infers that debtors intended no malice by sale and application of proceeds to others. *In re Harris*, 8 B.R. 88 (M.D. Tenn.1980). Malice as used in § 523(a)(6) does not require personal hatred or ill will, but requires the debtor to know his act will harm another and proceed in face of such knowledge. *Matter of Chambers*, 23 B.R.

206 (W.D.Wisc.1982). "Malicious" means implied or constructive malice resulting from a wrongful act done intentionally and without justification or excuse. *Matter of Grace*, 22 B.R. 653 (E.D.Wis.1982).

The judicial pen has written at length in defining "malicious" and if the appropriate standard is "intent to do harm", then it is clear each case must be determined on its unique facts. Indeed this criteria was established in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1935), where Justice Cardozo writing for the Court observed, "... a willful and malicious injury does not follow as of course from every act of conversion, *without reference to the circumstances.*" (Emphasis added.) This concept was espoused and further elaborated in *In re Lewis*, 31 B.R. 83 (W.D.Okla.1983), where the Court observed that in determining whether a debt was incurred through willful and malicious injury,

"... it is important that careful analysis be made of facts of each particular case and the degree of culpability, if any, which may be involved. It is vital to look to particular circumstances of each case, each with their own legal subleties and nuances, in determining presence or absence of maliciousness, keeping in mind at all times the recognized purpose of the Bankruptcy Code to provide a fresh start for the honest debtor. *In re Lewis*, id. at 86.

■ Based on the totality of the evidence here presented, it is the opinion of the Court that complaining creditor has failed to sustain its burden of proof that the debtors' actions constituted a willful and malicious injury. The debtors' actions in disposing of the herd in the manner outlined were not unreasonable in view of the conditions then existing. The proceeds received have either been received by this creditor or are recoverable through preference actions. The explanation given by debtor as to the "missing" cows stands unrebutted.

Having determined the issues presented, this Court now addresses the suggestion, indeed urgency, by FmHA that this case be viewed as a precedent. Quoting from FmHA's complaint: "It is FmHA's contention that if these debtors are forced to pay some price, however small, in return for their transgressions, FmHA will have gained." By extension, creditor seeks to make a precedent or example of these debtors to eliminate "a disease of epidemic proportion" convulsing and raging throughout the farming community.

We do not here deal with whether debtors' actions in their farming operation were in technical violation of the FmHA regulations and responsibilities set forth in the Financing Statement and Security Agreement. Such transgressions may in fact have occurred and could form the justification for FmHA's sanctions in monitoring or renewal of this account. They do not, however, mandate a nondischargeable finding under the Code which limits such relief to those debtor actions of willful and malicious injury.

The purpose of this Court is not to correct poor lending practices, imprudent loan requests, or economic and climatic conditions beyond the control of the American farmer. Rather, it is to administer specific cases, involving specific facts in conformity with the Bankruptcy Reform Act of 1978. This Court is neither the moral conscience nor legal guardian of industry-wide abuses or excesses.

Finally, FmHA notes that under Kentucky law, lack of good faith is not an element of conversion, that motive is irrelevant, and wrongful intent is nonessential to a finding of conversion. Simply stated, this is not the test under § 523(a)(6) which requires the debtors' actions to be conjunctively a "willful" and "malicious" injury in depriving a creditor of its property.

This Memorandum Opinion constitutes Findings of Fact and Conclusions of Law pursuant to Rule 7052, Rules of Bankruptcy Procedure, and an appropriate order has been entered this 15th day of June 1984.