In re Jerry BAFFORD, Debtor.

**FIRST OF AMERICA BANK–CENTRAL, Plaintiff,**

v.

**Jerry BAFFORD, Defendant.**

Bankruptcy No. 85–20281.
Adv. No. 85–0339.

United States Bankruptcy Court,
W.D. Tennessee, W.D.

June 19, 1985.

Eugene J. Podesta, Jr., Memphis, Tenn., for plaintiff.

Tim J. Johnson, Memphis, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM B. LEFFLER, Bankruptcy Judge.

This adversary proceeding came on to be heard on June 3, 1985 upon the complaint filed by the Plaintiff, First of America Bank-Central, seeking determination that the debt owed it by the Defendant-Debtor (Debtor) is nondischargeable under 11 USC § 523(a)(6). At issue is whether the Debtor's failure to maintain insurance coverage or notify the Plaintiff of his failure to do so on an automobile in which the Plaintiff had a security interest where such insurance maintenance was required by the purchase money security agreement between the parties and where the automobile was subsequently, accidentally damaged may be construed as "willful and malicious injury by the debtor ... to the property of another entity" within the meaning of 11 USC § 523(a)(6).

After careful consideration of the testimony, statements of counsel, the case record as a whole, and applicable law, the Court concludes that the "willful and malicious" requirement of 11 USC § 523(a)(6) is not met in this instance.

The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

On or about September 26, 1977, the Debtor purchased an automobile from Story Oldsmobile, Inc. in Lansing, Michigan. In consideration for financing the Debtor

executed a purchase money security agreement with the Seller and the Plaintiff which granted the Plaintiff a security interest in the automobile. The terms of the agreement required that the Debtor obtain and maintain insurance coverage on the automobile "in an amount at least equal to the unpaid balance of the debt secured hereby."

According to the Debtor's testimony, such insurance was obtained and maintained until he became unable to pay the premiums as a result of having been "laid off" of his job during the latter part of 1978. Shortly after being "laid off," the Debtor moved to Memphis where he attended Memphis State University using funds he received through the "G.I. Bill." He testified that he remained unemployed, however, and therefore "did not have the money to pay" the installment loan payments or the insurance premiums.

Due to the Debtor's default in making loan payments the Plaintiff repossessed the automobile in May of 1979. Prior to the repossession but following the lapse in insurance coverage the automobile was damaged when it was struck from behind by a vehicle driven by an uninsured driver.

The damages to the automobile were assessed at $2,597.83. As a result thereof the sale of the damaged automobile only netted the Plaintiff $2,350.00 or $3,935.27 less than the amount owed by the Debtor.

In October of 1984, the Plaintiff obtained a judgment against the Debtor in the Michigan District Court in the amount of the deficiency. This judgment was subsequently registered in Tennessee pursuant to the Uniform Enforcement of Foreign Judgments Act, T.C.A. 26–6–101 et seq.

In January of 1985, the Debtor filed a Chapter 7 Petition with this Court seeking to have this and other debts discharged pursuant to 11 USC § 727. It is the Plaintiff's objection to discharge of this deficiency judgment that is at issue here.

The Plaintiff's objection is brought under 11 USC 523(a)(6) which reads:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt— (6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ....

By its terms, the statute requires that "the property of another entity" has been injured "willfully and maliciously" by the Debtor.

The facts here show that there has been "injury to the property of another" by the Debtor, thus, the question becomes whether the injury can be said to have been "willful and malicious" within the meaning of 11 USC § 523(a)(6). The answer necessitates a brief look at the history of "willful and malicious injury" as interpreted by the courts and Legislature for the purpose of Bankruptcy Law.

11 U.S.C. 523(a)(6) is the successor to § 17(a)(2) of the old Bankruptcy Code which excepted from discharge liabilities for "willful and malicious injuries to persons or property of another" and later for willful and malicious conversion of the property of another. "Willful and malicious injuries" under § 17(a)(2) were initially defined as including injuries resulting from acts "done intentionally" which reflected the debtor's "willful disregard of duty...." by the United States Supreme Court in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). Subsequent judicial holdings interpreted *Tinker* to also stand for the application of a *"reckless disregard of duty"* standard. It thus became settled that for the purposes of § 17(a)(2), an injury to persons or property of another done willfully with specific or implied malice amounted to "a willful and malicious injury." *United Bank v. Nelson* 35 B.R. 766 (Bkcy.N.D.Ill.1983) p. 769.

When enacting the Bankruptcy Code of 1978 Congress included a comment offering its own somewhat different definition of "willful and malicious." This comment states:

.... Under this paragraph "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S.

473 [24 S.Ct. 505, 48 L.Ed. 754] (1902) [...] held that a less strict standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled. Sen.Rept. No. 95989, 95th Cong., 2d Sess. (1978); 77–79 U.S.Code Cong. & Admin.News, 1978, 5787, 5865; *also* House Report No. 95–595, 85th Cong., 1st Sess. (1977), 363 U.S.Code Cong. & Admin.News 1978, 5787.

From the comment it is clear that "willful means deliberate or intentional." However, Courts facing 523(a)(6) issues are split on the standard to be applied to the "malicious" requirement given the Comment's language overruling *Tinker's* "reckless disregard" standard.

The split in authority seems to be between application of a "specific intent" to harm standard, *In re Hodges*, 4 B.R. 513 (Bkcy.W.D.Va.1980), and the *Tinker* standard of implied or constructive malice, *In re McCloud*, 7 B.R. 819 (Bkcy.M.D.Tenn. 1980).

■ The decisions rendered in this District interpret the "willful and malicious injury" requirement of 11 USC § 523(a)(6) to consist of an intentional or deliberate act by the debtor constituting "something more than reckless disregard" for the property of others as that which causes injury to the property. *In re Zickefoose* (unreported, Bk. no. 82–10227, W.D.Tenn.1983), also see *In re Brimm* (unreported, Bk. no. 82–11563, W.D.Tenn.1984).

The facts in this case resemble those present in the *Zickefoose* case.[1] In that case the debtors, a married couple, filed a Chapter 13 wage earner case and plan, subsequent to which GMAC repossessed an automobile from the debtors without knowledge of the Chapter 13 Petition. The parties later entered into an agreed order whereby the automobile was returned to the debtors with the stipulation the automobile would be insured with GMAC named as loss payee at all times during the term of the plan. Several months later, the husband filed an individual petition for relief under Chapter 7.

While the wage earner plan was still in effect, the debtor had a wreck completely totalling the automobile.

Between the time of the accident and the debtor-husband's Chapter 7 filing, the parties divorced and the wife later converted her confirmed wage earner plan to a Chapter 7. She sought to discharge the debt owed to GMAC which was objected to by GMAC.

The Honorable David S. Kennedy, Bankruptcy Judge for the Western District of Tennessee, found the debt to be dischargeable and reasoned that:

> The failure to insure the car with GMAC named as loss payee is a breach of contract and negligence on the part of the debtor, but this does not constitute "willful and malicious injury" by the Debtor as to GMAC as contemplated in § 523(a)(6). The nonpayment of the insurance premium was attempted to be explained by the Debtor due to no funds being available for such insurance at the time. Even though the explanation is perhaps a "weak" excuse for driving an uninsured vehicle, it cannot be held from the proof adduced to be a deliberate and intentional act to harm GMAC.

■ In the instant case, according to the Debtor's unrefuted testimony, he was unable to pay the insurance premiums on the Plaintiff's automobile as a result of having been laid off and having "no money" with which to do so. As to his failure to notify the Plaintiff of his inability to pay the premiums, the Debtor testified that he "hoped" to become employed and have the funds with which to pay the installments on the loan as well as the insurance so that he could keep the automobile.

Borrowing from the reasoning in the above cited *Zickefoose* case while the Debtor's behavior in this situation amounts to "a breach of a contract and negligence ... [it] does not constitute 'willful and malicious injury' by the Debtor as to the [the

---

1. See also *In re Maiolo*, 12 B.R. 114 (Bkcy.N.D. Ga.1981).

Plaintiff] as contemplated in § 523(a)(6).... Even though the explanation is perhaps a "weak" excuse for driving an uninsured vehicle, it cannot be held ... to be a deliberate and intentional act to harm [the Plaintiff]."

IT IS, THEREFORE, ORDERED that the objection to the dischargeability of the debt of First of America Bank-Central is denied.