138

In re Beverly J. ROBERTSON,
441–40–2949, Debtor.

John F. ANDERSON, Jr., James Mark Anderson, and John Paul Gilliam, as Trustees for the "Anderson Wholesale Company Employees Benefit Plan", Plaintiffs,

v.

Beverly J. ROBERTSON, Defendant.

Bankruptcy No. 94–71437.
Adv. No. 94–7107.

United States Bankruptcy Court,
E.D. Oklahoma.

Aug. 28, 1995.

Mark Grober, Muskogee, OK, for plaintiffs.

James R. McClure, Muskogee, OK, for defendant.

## ORDER

TOM R. CORNISH, Bankruptcy Judge.

On the 26th day of July, 1995, the above-referenced adversary proceeding came on for trial. Counsel appearing were Mark Grober, attorney for the Plaintiff and Jim McClure, attorney for the Defendant. At the conclusion of the trial, the parties were allowed until August 18, 1995, in which to submit briefs on the entitlement to attorney fees. The Plaintiff's attorney filed a letter stating that he could not find any authority which indicated that attorney fees were allowable. Thus, attorney fees will not be awarded.

After hearing the evidence presented, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr.P., in this core proceeding:

### FINDINGS OF FACT

1. The Debtor/Defendant testified that she was a resident of Muskogee, Oklahoma and had been employed at Anderson Wholesale Company for 20 years and 3 months. The Debtor contributed to a medical plan known as the "Anderson Wholesale Employee Benefit Plan" ("the Plan"). The Debtor testified that she received a copy of the Employee Benefit Plan Handbook. Section 8.03(m) of the Plan, as set forth in the Handbook, provided:

> In the event that any payment is made as a benefit under this Plan, the Plan shall be subrogated and succeed to the rights of

recovery by any participant from a third party for incurred hospital, surgical, and medical expenses. All sums recovered must be paid over to the Plan. The participant shall take such action as necessary to furnish information, assistance, execution of assignments/liens, or other instruments that the Plan may request to facilitate enforcement of the rights of the Plan hereunder.

2. The Defendant further testified that her son, Todd, was in a terrible accident. He was shot in the chest with a sawed off shotgun. As a result of the accident, Todd had three ribs removed.

3. Prior to the Plan paying any benefits on Todd's claim, the Debtor executed a "Reimbursement Agreement." She agreed to reimburse the Plan for medical benefits out of the recovery from the tort-feasor. The Plan paid $32,679.96 on Todd's claim.

4. The Debtor settled with the tort-feasor's insurance carrier, Preferred Risk Group, for $85,000.00. The Debtor did not consult with or retain an attorney while negotiating a settlement with Preferred Risk. At the time the Debtor settled with Preferred Risk, she and Todd executed a "Release. Indemnifying Agreement". The Release provided, in pertinent part, as follows:

> FURTHERMORE: The Undersigned do hereby expressly stipulate and agree, in consideration of the aforesaid payment and agreement, to indemnify and hold forever harmless the said tort-feasor(s) against loss from any further claims, demands or actions that may hereafter, or at any time, be made or brought against the said tort-feasor by the said Harold Todd Robertson, Beverly Robertson or any medical provider or payor by virtue of any medical coverage plan or by any one on behalf of said persons, provider, or payor for the purpose of enforcing a further claim for damages on account of the injuries sustained in consequence of the aforesaid accident.

5. Thereafter, the Debtor attempted to negotiate a compromise with the trustees of the Plan. The Debtor offered to pay ninety percent (90%) of the $32,679.96 to the Plan. James Mark Anderson, trustee of the Plan, testified that he did not feel that he could make a "deal" with the Debtor because other members of the Plan always paid one hundred percent of the medical expenses back to the Plan. He testified he felt he would be discriminating against the members of the Plan by accepting less than the whole amount of the Plan's claim.

6. The Debtor testified that she no longer has any of the funds. She testified that she spent about $7,000 on her home and the other proceeds were used to purchase a car; pay off other loans; and to give her son and mother gifts. The Debtor further testified that she thought she might need some of the money, so she gave approximately $9,000 to her sister for safekeeping. The Debtor's sister has since returned the $9,000.

7. The parties agree that the Debtor appropriated the funds to her own use and benefit. The parties further agree that the amount of the claim has been reduced to $23,299.96. The Plaintiffs recovered approximately $9,000 from the Debtor's sister, thereby reducing their claim.

8. A lawsuit was filed by the Plaintiffs in the United States District Court for the Eastern District of Oklahoma based on their right of subrogation. A jury trial was held before Magistrate James H. Payne. A judgment was entered in favor of the Debtor and her son. On appeal to the District Court, the Honorable Frank H. Seay reversed the entry of judgment and remanded the case to Magistrate Payne to enter a judgment in favor of the Plaintiffs in the amount of $32,679.76.

9. The Plaintiffs contend that the debt for the payment of the medical bills constitutes a "willful and malicious injury" to the Plaintiffs and therefore the debt is nondischargeable. The Plaintiffs also contend that the debt is nondischargeable because it is a debt for fraud or defalcation while acting in a fiduciary capacity.

### CONCLUSIONS OF LAW

■ A. Section 523(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> (a) A discharge ... does not discharge an individual debtor from any debt—

> \*      \*      \*      \*      \*      \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny;

*   *   *   *   *   *

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

▮ B. A "willful and malicious injury" within the meaning of Section 523(a)(6) means a wrongful act, intentionally done without just cause or excuse. *In re Springer*, 85 B.R. 634, 635 (Bankr.S.D.Fla.1988) (*citations omitted*). The Tenth Circuit in *In re Pasek*, 983 F.2d 1524 (10th Cir.1993) held that the § 523(a)(6) exception required proof of intentional injury.

▮ A debtor's conduct is "willful" if it is volitional and deliberate, as opposed to unintentional or accidental. *C.I.T. Financial Services vs. Posta (In re Posta)*, 866 F.2d 364 (10th Cir.1989). A willful and malicious injury includes conversion of property. *Id. at 367*. The "malicious" requirement should focus on the "debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor". *Id.; see also, In re Grey*, 902 F.2d 1479, 1481 (10th Cir.1990). The Tenth Circuit noted that:

> [M]alicious intent must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights. *In re Nelson*, 67 B.R. [491] at 497 [Bankr.D.Minn.1985]; *In re Dever*, 49 B.R. 329, 332 (Bankr.W.D.Ky. 1984). Such knowledge can be inferred from the debtor's experience in the business, his concealment of the sale, or by his admission that he has read and understood the security agreement. (citations omitted).

*Id.* at 367–68. In *Posta*, the court noted that the Postas were relatively inexperienced in business matters, that they had difficulty in understanding business concepts, and that they had not read the agreement. *Id.* at 368.

In *Nationwide Mutual Fire Ins. Co. v. Hale (In re Hale)*, 155 B.R. 730, 738 (Bankr. S.D.Ohio 1993), the court found that the debtor retained proceeds from the sale of the tractor which belonged to Nationwide. The court held that his actions were intentional and deliberate. *Id.* Further, the court found that the conduct was wrongful and without just cause and caused injury to Nationwide and thus, the conduct was malicious. *Id.*

The Debtor and her son obtained funds from the settlement with the tort-feasor's insurance company. She knew that the Plan was to be reimbursed for the medical expenses which it had duly paid. The fact that the Debtor attempted to negotiate a compromise settlement for ninety percent (90%) of the medical expenses is clear evidence of her knowledge of the Plan's right to reimbursement. The offer of compromise was turned down by the Plaintiffs. All the proceeds from the settlement were used for the Debtor's own benefit or given to her son or mother. The Debtor has spent the settlement funds in violation of the Plan's provisions and her subrogation agreement. The Court therefore finds that the debt is nondischargeable. Since the debt is nondischargeable pursuant to § 523(a)(6), no discussion of § 523(a)(4) application is necessary.

IT IS THEREFORE ORDERED that the debt owed to the Anderson Wholesale Employee Benefit Plan is hereby determined to be nondischargeable. A separate judgment is hereby entered simultaneously with this Order.